# Annie F. Hess v. Berwind-White Coal Mining Company, Appellant.

*Negligence—Movement of coal cars by coal company—Collision—Evidence.*

In an action against a coal mining company to recover damages for the death of plaintiff's husband, it appeared that the deceased at the time of his death was a brakeman employed on a railroad with which the defendant's property was connected by a switch. The evidence tended to show that one of the defendant's employees negligently dropped down a car upon some loaded cars standing on the switch, and forced one of these cars partly over the track of the railroad, and that after it had been standing there for about ten minutes, the freight train upon which the deceased was employed struck the car, and the deceased was thrown from the train and killed. The evidence showed that as soon as the train men saw the car they made due efforts to stop the train. *Held,* that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 6, 1896. Appeal, No. 44, Oct. T., 1896, by defendant, from judgment of C. P. Jefferson Co., September T., 1893, No. 461, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for death of plaintiff's husband.   Before McClure, P. J., of the 17th judicial district, specially presiding.

At the trial it appeared that on April 21, 1893, T. M. Hess, plaintiff's husband, was killed at a point on the Pennsylvania & North Western Railroad, where the defendant company's switch joined the railroad.   W. I. McGregor, an employee of defendant, was engaged on the day of the accident in dropping loaded cars from the defendant's tipple down to the switch or siding.   A number of cars had been run upon the switch and allowed to stand for four or five hours.   Against these cars McGregor then ran two loaded cars down from the tipple with such violence as to bump all the standing cars forward and hurl the first one so far that it projected over the main line of the railroad.   The car was allowed to stand upon the track for about ten minutes when it was struck by the rear car of a freight train which was being pushed backward on the railroad.   The evidence tended to show that the train men after they saw the car projected on the track did everything they could to stop the train.   The deceased was a brakeman on the train and, in the collision, was thrown off and killed.

Other facts appear by the charge of the court which was in part as follows :

It is contended, and there is no dispute as to this branch of the case, that the sidings about the coal company's works at No. 5 tipple were owned by the railway company ; that it was accustomed to back the light cars up a light car siding beyond the tipple, they were then placed on a siding with a grade, known as a loading siding, and brought to the tipple by the employees of the defendant company, loaded, and then run by gravity on down towards the main track of the railway, and that on this road was a throw-off or safety switch.   This switch seems to have been the one that is in ordinary use by railway companies at like places, and has been for twenty years, and that it was upon the day of the accident, so that ordinarily the cars, if they got beyond the control of the man in charge in dropping them down from the colliery, would run out on the ties and over towards the hill and away from the main track, so that they would not get on that main track.   This is the object of the switch.

It seems that on this day Mr. McGregor was dropping these cars for the company; he had dropped the two first cars (which was their custom, two at a time) to within some fifteen feet of the throw-off switch; he then dropped two more, and two more, until, at some one time, either one or three, so that he had the number of seven on this siding.  He then dropped two more down, and they went with such speed that it seems he was unable to control them, and they struck those seven cars, driving one, the last car, entirely off the siding through this throw-off switch to the front truck of the second car.  The first car was so driven that it protruded over on the line of the railroad.

It is contended on the part of the plaintiff that Mr. McGregor was negligent in the handling of these cars.  Now, it seems to us that if there was any negligence there at all it must have been in the starting of the cars hard enough to get too great a rate of speed before he crossed over the trestle at Polecat run, so that when he got beyond that he was unable to control them. If there was not negligence in that, there was no negligence in the handling of these cars, for the testimony is, and it is uncontradicted, that the brakes were in good condition, and he threw them on with all his might and staid with the cars and stuck to them until the collision occurred with the other cars standing on the siding.  So that if you find there is any negligence in this, the only part that we could see that would warrant it is that he must have allowed the cars to get under too great headway crossing this bridge, for beyond that he seems to have done everything in his power, and everything that had ordinarily been done by all the men that had run the cars there before.

In the second place it is contended that after the car had been thrown out on the main line notice was not given the railway company; that the defendants were negligent in not notifying the railway company of the obstruction on its tracks.

There was an arrangement or understanding between these companies, or probably orders from the railway company, as we understand the testimony, that when there was an obstruction on the track the orders were to go to the weigh-office and telephone that fact to the despatcher's office, in order that the railway company could promptly for itself remove, and notify the men running the trains of the obstruction.  The testimony of Mr. McGregor on this point is that it was some ten minutes

after the collision that he notified the railway company of the obstruction on the track. Was this notice given in time? Was it promptly given? And in addition was that all the notice that the railway company should have had of this obstruction? If it was, then the defendant company is not guilty of negligence on that branch of the case.

In order for the plaintiff to recover here she must not only show that the defendant company has been guilty of negligence, but it must also appear to you that the men in charge of this train were not guilty of negligence, for if they were guilty of negligence, and the two concurred or contributed—the negligence of the defendant company, assuming that there was negligence, and that of the hands running the train, if those two concurred or contributed to the injury, the plaintiff is not entitled to recover. It appears that this train was being backed along there at the rate of eight miles an hour; the engineer was at the rear of his train, and he was the first one, although at the rear of the train, to notice the obstruction on the track; the conductor and Mr. Hess, a flagman, and other brakemen were along this train, and the conductor, we believe, was on the first car, and the flagman also, and it seems, although they were there, that no notice was given by them to the engineer of the obstruction, until after he had noticed it himself and thrown on his brakes and reversed his engine. Now, it would seem to us, although this is a question for you to determine, that a train crew backing the train along the railroad track, with the engine, of course at the rear of it, should use rather extraordinary diligence in determining whether or not there are obstructions on the track, and in the running of the train, because the power which is usually applied, which is applied to drive the train, and the greatest power in the stopping of it, is at a point where the engineer cannot see, so that the signals have to be conveyed from one end of the train to the other before the greater power in stopping the train can be applied. Now we think you will have no difficulty in finding and saying that in the backing of a train there should be greater care used on the part of the operators or train men than if the train is running with the engine ahead.

Was there due care on the part of those train men? Could they by this due care have discovered the obstruction on the

track in sufficient time to have stopped the train? The evidence on the part of the engineer is that if they had, if the brakes had been applied in conjunction with his efforts, by the brakes on the tender and engine, and the reversing of the engine, the train could have been stopped in its length, or two hundred feet, and that he discovered the obstruction some eight hundred feet before they came to it, but was unable to stop the train because he received no assistance from the train men.

Now if they could have stopped the train with due care, could have seen the obstruction and stopped the train, and by not doing so they ran into it, they would be guilty of contributory negligence and the plaintiff could not recover.

It further is necessary for you to find, and of course a most important part of this case, or one of the important parts, at least, that the defendant met his death by reason of the obstruction on the track. He was seen shortly before the collision on top of the car, he then went back, and we believe the rear brakeman testified that he saw him down between the cars, as he passed over them just before the collision, or, rather, he stated he did not see him then, but that the last time he saw Mr. Hess he was down between the cars; he did not have time to look the last time he passed over them; the engineer some time before that saw him go down between the two cars, that is the first and second car, and one of the other men saw him go down between them, we believe that was Mr. Aul; but all the testimony is for you to determine, and if we have made a mistake we have no doubt you will readily correct it. So that this man, Mr. Hess, was seen at that time and then not again until he was on the track, maimed and injured to such an extent that in a few minutes he died.

Defendant's point and answer thereto among others were as follows:

10. That under the evidence in this case, the verdict of the jury should be for the defendant. *Answer:* This point is refused. [4]

Verdict and judgment for plaintiff for $3,500. Defendant appealed.

*Error assigned* among others was (4) above instruction, quoting it.

*G. A. Jenks,* with him *G. W. Means, B. M. Clark* and *W. M. Fairman,* for appellant.—In the moving and starting of cars on its road with appliances furnished by it, as in this, case, McGregor was the servant of the Railroad Company: Union Pacific Ry. Co. v. Harris, 12 U. S. C. C. A. 598; Oil Creek & Allegheny R. R. v. Keighron, 74 Pa. 316.

In an action to recover damages for alleged negligence, if the undisputed evidence discloses no negligence on the part of the defendant, it is error for the court to submit it to the jury as an open question: Reading etc. R. R. v. Ritchie, 102 Pa. 425; Hestonville, Mantua & Fairmount Pass. Ry. v. Kelley, 102 Pa. 115; Bunting v. Hogsett, 139 Pa. 363; Pass. Ry. v. Trich, 117 Pa. 390.

A proximate cause is one which, in actual sequence, undisturbed by any independent cause, produces the result complained of: Behling v. Pipe Lines, 160 Pa. 359; McGrew v. Stone, 53 Pa. 436; Texas & P. R. R. v. Doherty, 15 Southwestern Rep. 44. As the facts in this branch of the case were undisputed, it was the duty of the court to determine the question involved: Twp. of West Mahanoy v. Watson, 112 Pa. 574; Scott & Co. v. A. V. Ry. Co., 172 Pa. 646; Hoag v. L. S. & M. S. R. R., 85 Pa. 293; P. R. R. v. Kerr, 62 Pa. 353.

The train's hands were in the same common service with Hess for the same general purpose: Frazier v. Penna. R. R., 38 Pa. 104; Ryan v. C. V. R. R., 23 Pa. 384; Hoffman v. Clough, 124 Pa. 505.

*Charles Corbett,* with him *R. C. Winslow* and *John E. Calderwood,* for appellee.—The case was properly submitted to the jury: Yoders v. Amwell Twp., 172 Pa. 447; Spisak v. R. R., 152 Pa. 281; R. R. v. Werner, 89 Pa. 64; Philpott v. Penna. R. R., 175 Pa. 570; Davidson v. Ry., 171 Pa. 522; Gray v. Penna. R. R., 172 Pa. 383; Howett v. Phila. etc., R. R., 166 Pa. 607; Hestonville etc. R. R. v. Kelley, 102 Pa. 115; Bunting v. Hogsett, 139 Pa. 363; Oil City Gas Co. v. Robinson, 99 Pa. 1; Quigley v. Del. & Hudson Canal Co., 142 Pa. 388; Lloyd v. Phila. & Reading R. R., 162 Pa. 29; Vallo v. U. S. Express Co., 147 Pa. 404.

PER CURIAM, November 9, 1896:

Plaintiff's right to recover depended on questions of fact

which were clearly for the jury.   They were accordingly sub-mitted by the learned trial judge with fully adequate and sub-stantially correct instructions.   In view of these instructions the verdict is necessarily predicated of the following findings of fact, inter alia, viz : that McGregor, as employee of the min-ing company defendant, was guilty of negligence that resulted in the death of plaintiff's husband, and that no negligent act of the latter contributed thereto.   Special reference to the testi-mony tending to prove these and other facts necessary to sus-tain plaintiff's claim is unnecessary.   It is sufficient to say that the verdict was fully warranted by the evidence properly before the jury.   The defendant's four points recited in the specifica-tions respectively were correctly answered.   We find nothing in any of them that requires discussion.   The learned court was clearly right in refusing to affirm either of them.

Judgment affirmed.