W. G. Potter *v.* The Natural Gas Company of West Virginia, Appellant.

*Negligence—Pipe line—Contributory negligence—Highway—Proximate cause—Fright of horse—Evidence—Province of court and jury.*

In an action against a natural gas company to recover damages for personal injuries, it appeared that while plaintiff was driving in a one horse two wheeled cart along a highway which he traveled almost daily, the right wheel struck and scraped a two inch iron pipe, part of defendant's feed line at the side of the road. The mare which he was driving took fright, jumped to one side and kicked over the front of the cart, throwing plaintiff backward out of the cart and seriously injuring him. At the point of the accident a cut through a ridge at right angles to the road had been made for the road bed, which last, at the surface or wagon track, was eight feet six inches wide. The gauge of plaintiff's cart wheels was five feet two inches. The defendant had laid its pipe on the bank above the cut, close to a post and rail fence, within about two feet horizontally from the track on the highway. Either from the effect of changes of the weather on iron, or by physical force, the pipe at this point had been moved from its original position and was thrown in a curve out from the fence and down into the cut, so as to be over on the wagon track about a foot. It was shown that this had been the situation of the pipe for at least some weeks and, perhaps, months before the accident. *Held,* (1) that the question of defendant's negligence and of plaintiff's contributory negligence was for the jury; (2) that it was proper to admit evidence that some time prior to the accident another horse of quiet temper had been frightened at the noise made by a wagon wheel scraping on the pipe; (3) that it was proper to admit evidence that the pipe had been seen to be out of place for a long time, by an ordinary traveler, and until two or three weeks before the accident; (4) that it was proper to permit the plaintiff to testify that up to the time of his injury he had no knowledge of any other person coming into collision with the pipe.

In an accident case where the defendant alleges that the mare which had taken fright and caused the injury was a vicious animal, and that a former owner who had reared her had not used her, the plaintiff may show in rebuttal that the reason the mare had not been used was because her owner had so many horses that he had not work for all of them.

Argued Oct. 18, 1897.  Appeal, No. 52, Oct. T., 1897, by defendant, from judgment of C. P. Washington Co., May Term, 1896, No. 168, on verdict for plaintiff.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Trespass for personal injuries.    Before McILVAINE, P. J.

The facts appear by the opinion of the Supreme Court.

At the trial, W. D. Smith, a witness for plaintiff, testified that some weeks before, a horse owned by him had been frightened by the scraping of a wheel against the pipe, at the point where plaintiff was injured.

He was then asked whether the animal he was driving was quiet or excitable, as bearing upon the character of the noise made, and its liability to frighten a reasonably quiet horse.

Objected to as incompetent and irrelevant, because that was not the kind of a horse which this plaintiff was driving at the time of the injury.

By the Court: Objection overruled and offer admitted; the standard must be an ordinarily quiet horse ; exception allowed and sealed.

" A. A quiet horse, I think.   I think any woman can drive it anywhere ; has done it; and been drove to this town many a time by a woman." [1]

R. B. Plants, a witness for plaintiff, was asked this question :

" Q. How far back from that time, now, had you known that pipe to be out in the roadbed ? "   To be followed by evidence showing that the field boss or manager of the line in that locality traveled that highway almost daily for a year at least preceding this accident; for the purpose of showing negligence on the part of the company in not taking care of their line, and allowing it to interfere with the highway.

Objected to as incompetent and irrelevant, as not showing, and not tending to show, the position of the pipe line in the road at the time the plaintiff was injured by it.

By the Court: The testimony is admitted, not to show the position of the pipe line at the time of the accident, but to show that the company had knowledge that the pipe line would get down into the road and not stay up on the bank along the fence, where it is claimed the plaintiff says it ought to have staid in order to be out of the way of the traveling public ; objection overruled, and exception allowed and bill sealed.

" A. Oh well, pretty soon after it was laid ; it was warm weather when it was laid, and it wasn't very long afterwards until it was down in the road; I don't know just what time, but it wasn't long." [2]

Clark Post, a witness for plaintiff, testified:

" Q. Had you any experience at that point ? A. Yes, sir, my mule team scared there one Sunday morning in the fall of 1894. Q. What caused the scare?"

Objected to as incompetent and irrelevant, and not connected in point of time or condition with this accident.

The purpose is to show how long this line was left in the highway by the defendant company, for the purpose of showing they had notice.

By the Court: I think it is competent; objection overruled, exception allowed and bill sealed.

" A. Well, I was passing along that road one Sunday morning going to church with my wife— Q. Which way were you going ? A. I was going up the creek northeast; I can't say what scared my mules in the first place ; the first thing I knew they jumped ; they sprung, and one wheel went over the pipe ; it laid right in the track of the road. The front wheel went over between that inside, and it made a great noise, and the hind wheel then struck the pipe, too ; they turned and I had some trouble in getting them off of it; the road was narrow and I had to turn pretty square across to get them off." [3]

Wm. G. Potter, the plaintiff, was asked this question:

" Mr. Potter, up to the time of the accident which you have told about, had you any knowledge of any of the persons who have testified here, or of any other person, having hit this pipe or had an accident of any sort there ? "

Objected to as incompetent and irrelevant.

" A. I didn't."

By the Court: It is competent, perhaps, to exclude an argument, as bearing on the question of contributory negligence. [5]

Plaintiff offered to ask Jennie McNay how many horses her father had at the time of the sale to Mr. Potter, with a view of showing the lack of breaking or training that the horse had had prior to the purchase, to rebut the presumption that it was by reason of the character of the horse that the work had not been done.

Objected to as incompetent and irrelevant.

By the Court: Objection overruled, exception allowed and bill sealed.

" Q. How many had your father ?   A. I think he had about sixteen or seventeen then." [6]

Defendant's points and the answers thereto among others were · as follows :

1. Under all the evidence in the case the plaintiff cannot recover, and the verdict should be for the defendant.   *Answer :* Refused. [7]

2. Under the pleadings and evidence in this case the plaintiff cannot recover, and the verdict should be for the defendant. *Answer :* Refused. [8]

3. There is no evidence sufficient to permit the jury to find that the presence of the pipe line in the highway when struck by the wheel of the plaintiff's cart was the sole efficient cause producing the injuries to the plaintiff's person and property ; and therefore the plaintiff cannot recover, and the verdict should be for the defendant.   *Answer :* Refused. [9]

5. It appears by the undisputed evidence that the injuries to the plaintiff's person and property were caused proximately by the kicking, plunging and running away of the plaintiff's mare ; these injuries were not such as the defendant was reasonably bound to foresee as consequences from suffering its pipe line to lie on the side of the traveled road ; therefore the plaintiff cannot recover, and the verdict should be for the defendant.   *Answer :* Refused.   What was the proximate cause of the injury is a question, under the evidence, for the jury. [10]

8. To render the defendant company liable for his injuries by reason of the presence of the pipe line where it was struck by the cart wheel, the existence of the pipe line there must have been the sole efficient cause of the injuries; and if the jury believe from the evidence that the injuries were caused by the uncontrollable jumping and kicking and running away of the mare, or from those causes concurring with the position of the pipe line, then the plaintiff cannot recover, and the verdict should be for the defendant.   *Answer :* Affirmed, subject to what we have said in our general charge on the question of the proximate cause. [11]

4. Even if the pipe line at the time of the accident lay on the right-hand track of the traveled roadway when struck by the cart wheel, yet, the undisputed testimony showing that the plaintiff knew of the presence of the pipe line there, and show-

ing further that by ordinary care and caution he could have avoided striking it, the plaintiff cannot recover, and the verdict should be for the defendant. *Answer:* Refused. [14]

10. If the jury believe from the evidence that the plaintiff had knowledge at the time or a short time before the accident, that the pipe line projected into the traveled roadway, leaving sufficient space to enable him to pass it without danger, and that he could have seen it, but did not observe care and caution to watch for the pipe line and to avoid striking it, but suffered his wheel to strike the line, resulting in the fright, kicking and runaway of his horse, he cannot recover for the injuries received, and the verdict should be for the defendant. *Answer:* Affirmed. It is proper to say in connection with the affirmance of this and the preceding point that the measure of care and caution required of the plaintiff was ordinary care and caution, or reasonable care under the circumstances. [17]

The court charged in part as follows:

Now, gentlemen, the first question that confronts you for solution in this case is this one of negligence. Was the defendant company on November 1, at the time this plaintiff was injured, guilty of negligence in the maintenance of its pipe line, which caused the plaintiff's injury; and, as this pipe was laid on the public road, you must, to determine this question, look at the relative rights of the parties plaintiff and defendant. The company was engaged in a lawful business, and it had the right, at least so far as the plaintiff was concerned, to lay its pipe within the limits of the public road, as long as it was laid and maintained in such a way as not to unreasonably interfere with the public travel, or endanger those who might pass along the highway in conveyances or otherwise. The road was dedicated to public travel, and the defendant company, in laying and maintaining its pipe line along the road, owed a duty to those who might travel thereon, and that was not to unreasonably obstruct the traveled portion of the road so that the natural and probable result of the obstruction would be to injure some one that might be using the road for lawful purposes. The plaintiff does not, as we understand it,—and he couldn't,—deny the right of the company to lay its lines of pipe close along the fence and upon this narrow strip of ground entirely outside of

the traveled roadbed to which we have referred, but he claims
that the company ought to have maintained its line in that posi-
tion; but, in place of doing so, it allowed part of the line to get
down into the traveled roadbed, and to remain there, and that
it was there on the evening of November 1, a dangerous ob-
struction to the public travel, and that it caused the injury
which he sustained.

Now, gentlemen, on this branch of the case you will take all
the testimony, and you can easily recall it, for it has been elabo-
rately and ably commented upon by counsel on both sides, and
determine, first, where was this pipe at the place of the accident
and at the time of the accident; was it on the part of the road
used for public travel, and if it was, was it a dangerous obstruc-
tion to travel? [Then, was the pipe the proximate cause of the
plaintiff's injury; that is, was the injury of the plaintiff the
probable and natural result of the pipe being in the road where
it was; and again, ought those in charge of the defendant com-
pany's pipe line, in the exercise of ordinary care and use of the
means reasonably necessary to avoid injury to others, to have
foreseen that this pipe would be the cause of frightening rea-
sonably safe and quiet horses to the injury of those traveling
the road, as the plaintiff was doing when injured? If you find
from the evidence that these questions must all be answered in
the affirmative, then the defendant company would be guilty of
negligence and the plaintiff could recover, unless the evidence
in the case shows that he himself was guilty of negligence which
contributed to his injury.] [12]

The law is that, if any person contributes in any degree to a
personal injury which he suffers by want of care under the cir-
cumstances, he cannot claim damages from another person
whose negligence may also have contributed to the bringing
about of the injury. It is only where the negligence of another
is the proximate cause of his injury, and he himself has not in
any degree contributed thereto by his own negligence, that the
injured person can recover damages. You will apply this prin-
ciple of law to the facts in this case, as you may find them.
[Did the plaintiff, W. G. Potter, exercise that care and caution
which a reasonably careful, prudent person would have done
under the circumstances by which he was surrounded at the
time the accident happened?] [15]   Mr. Potter, as we have

already indicated, had a right to expect that the Natural Gas Company of West Virginia, or those conducting its affairs, would exercise ordinary care and caution not to obstruct the road he traveled, so that the natural and probable result would be that he would be injured, and the gas company had just the same right to expect, even if any part of their line was on the road, that Mr. Potter would exercise ordinary care and caution not to injure himself by driving against the pipe so as to cause his horse to frighten and throw him out of his cart. A person knowing another has negligently laid an obstruction in the road cannot take the risks of running into or over the obstruction, and then charge up any injury he may suffer thereby to the person who put or left the obstruction in the road. In this case, if the defendant company were bound, in the exercise of ordinary care and caution, to have known that this pipe line, lying in the roadway as it may have been on November 1, would naturally and probably frighten a reasonably quiet horse of any one that might drive against it, then the plaintiff, exercising the same care and caution, should have known the same thing, that it was his duty to exercise caution under the circumstances that surrounded him, not to drive against the pipe, and if he failed to do so and was injured, he cannot recover from the defendant company.

There are two or three things in the evidence to which we wish to call your attention in order that you may not be misled as to the purpose for which the court allowed the evidence to be introduced. There were a number of witnesses who testified to seeing this pipe down off the little bank by the fence and out in the roadway as far as the track on the east side of the road made by the wheels of vehicles, at different times, long before the date of the accident to the plaintiff, some as far back as the year 1894. This testimony is competent to show that the company, or its officers or employees charged with the care of the pipe line knew from seeing it, or ought to have known, that the line did not stay up on the bank out of the road where it was laid, and that it needed some kind of support to keep it there ; but it does not follow from this testimony that, because the pipe was down and out in the road at certain points or lay in a certain position from the fall of 1894 to the summer of 1895, therefore it must have been down on November 1, 1895, in the

same position. Now, the testimony is that the position of the line changed; perhaps on account of the temperature, the iron being affected by the heat and by the cold,—frost. The testimony is competent as tending to show that the pipe at this point would get down into the part of the road devoted to travel, and the company knew it, or ought to have known it in the exercise of ordinary care and caution in the management of its business, before the time of the accident, and have done something to prevent it, if it was dangerous to travel. Whether or not it was down on the traveled road, and to what extent, on the evening of November 1, and caused the plaintiff's injury, is another question to be determined from other evidence relating thereto.

Again, a number of persons were allowed to testify that during 1894 and 1895 they had run against this pipe at this point in that road, and that the noise made by running against the pipe with a buggy or wagon wheel frightened their horses. From this evidence you are not to infer that because they ran against the pipe with their wheels and a noise was made that frightened their horses, that therefore, the plaintiff must have run against it and had his horse frightened in the same way on the evening of November 1, 1895. [This testimony was not introduced for that purpose, but as tending to show that the natural and probable result of running the iron tire of a wheel against the iron pipe, located as this one was, was to frighten reasonably safe and quiet horses. The plaintiff in this case was admittedly injured by the action of his horse, and to make the defendant company responsible for the action of the horse, the burden is on the plaintiff to show that that action was the result of a fright caused by the negligence of the company; and to do that he seeks by this evidence to show that the natural and probable result of leaving a pipe in the road, located as this one was, was to frighten the horses of a traveler who might drive against it, and that it was so located when off the bank and in the road that a traveler in a buggy or wagon would naturally and probably run against it. This, we say, gentlemen, is the purpose for which you must consider this testimony.] [4]

Again, considerable testimony has been introduced as to the character or disposition of the mare the plaintiff was driving at the time of the accident. This testimony, gentlemen, is competent in this aspect; the defendant company stands in the shoes

of the supervisors of the township; it was bound to know that persons in passing over the road would travel in wheeled vehicles and with reasonably safe and quiet horses, and it was bound to know the habits of such horses, one of which is to frighten, and in their fright to do things unlooked for and unexpected, and it was bound to foresee and provide against the danger to ordinary travel in the highway, and therefore in laying and maintaining its pipe line within the limits of the public road, if it did so, it was guilty of negligence if it laid and maintained the line in such a position that in the proper use of the road by a person traveling in a vehicle, and with a reasonably safe horse, the horse thereby, as a natural and probable result, frightened; but the company, as the township, was not bound to know nor to expect that any traveler would drive along the road with a vicious, unruly and unbroken horse, and therefore it was not bound to foresee and provide against the fright and consequent acts or conduct of such a horse. And the reason for the rule, I think, is twofold; first,—any person who undertakes to drive such a horse on the public highway runs more than the ordinary risk, and the law requires him to assume that risk himself; and second,—if such a horse is frightened by anything negligently left in the highway, it is impossible to tell whether his subsequent action, which caused the injury, is the result of his fright or of his viciousness.

Now, gentlemen, to recapitulate: first, the plaintiff claims that the defendant company was negligent in allowing part of its pipe line to be and remain in the public road at the point where the accident occurred, in such a position that, being run over, the natural and probable result was to frighten a reasonably safe and quiet horse, and thus cause injury to those who were lawfully and properly using the road. The defendant company denies that its line, as it may have dropped down in the road, was an obstruction that would naturally and probably endanger any one traveling the road using ordinary care; that its presence in the road was not such as would have suggested danger to a reasonably careful, cautious traveler; that it was not an obstruction likely to produce injury; that it was not a dangerous obstruction. That is the first question you must determine; did the company in laying and maintaining its line at this point exercise ordinary care and caution to avoid injury

to those who might use the highway for ordinary travel? If it did, you need go no further, for the plaintiff cannot recover in this action, if the company was not guilty of negligence in laying and maintaining its pipe line, and you will return a verdict for the defendant. [But if you find the company was guilty of negligence, then you go to the next question, and that is, was this negligence the proximate cause of the plaintiff's injury? The plaintiff alleges it was; that is, that the natural and probable result of this pipe being in the traveled roadway was to frighten the horse of any one who drove against it, and thus endanger his safety, and that the plaintiff, making a proper use of the traveled way, with a reasonably safe and quiet mare, drove against the pipe, and that what might have been expected to result did result, viz : this mare frightened, and in her fright injured him, and the presence of the pipe in the road was " the cause " causing his injury. The defendant denies this. It says, first, that the immediate connection of causes, to wit: the pipe in the road and the cart striking it and creating a rasping noise, and the fright of the horse and the injury of the plaintiff could not have been reasonably foreseen, and that the pipe in the road was not the direct or proximate cause of the plaintiff's injury ; that is, that these causes which I have mentioned and which preceded,—taking the injury as the effect,—were not so immediately and necessarily connected together as to make " the cause " causing the injury, but that they were so disconnected and so unnatural and improbable in their connection, that the kicking of the mare and her running away must be taken as the proximate cause of the injury to the plaintiff. The defendant company further claims that the action of this mare was not the result of fright occasioned by the noise made by the wheel of the cart striking the pipe, but that her kicking and running away was the result of a vicious habit and nature. You will carefully consider all the testimony bearing on this branch of the case. If you find that the injury of the plaintiff was not the natural and probable consequence of the defendant's negligence in allowing its pipe line to be and remain on the traveled highway, such a consequence as under the surrounding circumstances and facts might and ought to have been foreseen by the company, then you need go no further, but find for the defendant. But if you should find that the negligence of the defend-

ant company was the proximate cause of the plaintiff's injury, then you will proceed to the next branch of the case; and that is, did the plaintiff in driving along the highway exercise ordinary care and caution, or was he guilty of negligence himself which contributed, in any degree, to his injury.] [13]

The plaintiff alleges that he was driving with ordinary care and caution, and that his own negligence in no degree contributed to the accident in which he was injured. The defendant denies this. In determining this question you must take into consideration all the circumstances, the character of the road on which he was driving, its width, the fact that it was daylight, his knowledge of the road and of the pipe and its location, and any other circumstances that appear in the evidence, that are relevant to the question, should be carefully considered by you, and [after such careful consideration ask yourselves the question, could the plaintiff, by the exercise of ordinary care and caution, have avoided driving on the pipe, or did he, in driving along the road on that evening at this point, exercise ordinary care and caution, and, notwithstanding the use of care and caution, did he drive upon the pipe, and was his mare frightened and he injured without any fault of his own. If you find that he knowingly took the risk of driving upon the pipe, or he thoughtlessly and recklessly drove upon it, or through the want of ordinary care under the circumstances drove upon it, then he cannot recover and your verdict will be for the defendant. But if you find that he exercised ordinary care and caution, and that he in no degree contributed to his injury by his own negligence, then you will go to the next question,—that is, the assessment of damages.] [16]

Verdict and judgment for plaintiff for $1,178.75. Defendant appealed.

*Errors assigned* were (1-3, 5, 6) rulings on evidence, quoting the bill of exceptions; (4, 7–17) above instructions quoting them.

*Boyd Crumrine*, with him *David Sterrett, C. C. Sterrett* and *E. E. Crumrine*, for appellant.—The court erred in admitting irrelevant testimony: Platner v. Platner, 78 N. Y. 95; 1 Wharton on Evidence, sec. 29; Blair v. Pelhan, 118 Mass. 420; Payne v.

Lowell, 10 Allen, 147; Cleveland, etc., R. R. v. Wynant, 35 Am. & Eng. R. R. Cases, 328; Hudson v. Chicago, etc., R. R. Co., 59 Iowa, 581; Early v. Lake Shore, etc., R. R., 30 Am. & Eng. R. R. Cases, 163.

Defendant was not negligent: Herr v. Lebanon City, 149 Pa. 222; Pass. Ry. v. Boudrou, 92 Pa. 475; Hoag v. R. R. Co., 85 Pa. 293; West Mahanoy Twp. v. Watson, 116 Pa. 344; Wolff Mfg. Co. v. Wilson, 152 Ill. 9.

The pipe line was in no sense a nuisance per se. The defendant's position and rights were essentially the same as the right in our state of an owner of abutting land to place building materials on or along a highway for temporary use: Palmer v. Silverthorn, 32 Pa. 65; Mallory v. Griffey, 85 Pa. 275; Piollet v. Simmers, 106 Pa. 95; Hoag v. Michigan Southern & Lake Shore R. R., 85 Pa. 293; Penna. R. Co. v. Kerr, 62 Pa. 353.

The proximate or sole efficient cause of the plaintiff's injury was not the presence of the defendant's pipe line out on the highway at the time thereof; but the plaintiff's injury was directly and proximately caused by the plaintiff's own negligence in driving against the pipe line, followed in the chain of efficiency by the uncontrollable kicking and running away of the plaintiff's mare: Pass. Ry. Co. v. Trich, 117 Pa. 399; Forks Twp. v. King, 84 Pa. 230; Mansfield Coal & Coke Co. v. Mc-Enery, 91 Pa. 185; Seymour v. Maddox, 16 Q. B. 326; Green St., etc., Ry. v. Bresmer, 97 Pa. 103; Sykes v. Packer, 99 Pa. 465; Erie City v. Magill, 101 Pa. 616; Pittsburg South. Ry. v. Taylor, 104 Pa. 306; Dehnhardt v. Philadelphia, 15 W. N. C. 214; Wannamaker v. Burke, 111 Pa. 423; Barnes v. Sowden, 119 Pa. 53; Forker v. Sandy Lake Bor., 130 Pa. 123; Hart v. Coke Co., 131 Pa. 125; Diehl v. Iron Co., 140 Pa. 487; Haven v. Bridge Co., 151 Pa. 620.

The question was for the court: Carroll v. R. R. Co., 12 W. N. C. 348; Marland v. R. R., 123 Pa. 487; Robb v. Connellsville Bor., 137 Pa. 42; Hill v. Tionesta Twp., 146 Pa. 11; Lynch v. Erie City, 151 Pa. 380; Behling v. Pipe Lines, 160 Pa. 359.

*W. S. Parker*, with him *Winfield McIlvaine*, for appellee.— The question of defendant's negligence was for the jury: Beatty v. Gilmore, 16 Pa. 463; Gates v. R. R., 150 Pa. 50; Yoders v.

Amwell Twp., 172 Pa. 455; Bitting v. Maxatawny, 177 Pa. 216; Darling v. Westmoreland, 13 Am. Rep. 55; District of Columbia v. Armes, 107 U. S. 519; Quinlan v. City of Utica, 11 Hun, 217; Calkins v. City of Hartford, 33 Conn. 57; Collins v. Dorchester, 60 Mass. 396; Aldrich v. Pelham, 67 Mass. 510; Kidder v. Dunstable, 77 Mass. 342; Born v. Plank Road Co., 101 Pa. 337; Ry. v. Taylor, 104 Pa. 315.

For the court to have withdrawn the question of proximate cause from the jury, would under the facts of the case, have been clear error: Wilson v. Penna. R. R., 177 Pa. 512; Hoag v. R. R., 85 Pa. 293; Haverly v. R. R., 135 Pa. 58; Fairbanks v. Kerr, 70 Pa. 91; Neslie v. Ry., 113 Pa. 303; Mann v. Weiand, 81* Pa. 243.

If there is a doubt upon the question of contributory negligence, it must go to the jury: Kohler v. R. R., 135 Pa. 346; Detroit R. R. Co. v. Van Steinburg, 17 Mich. 99; McKee v. Bidwell, 74 Pa. 218; Bruch v. Philadelphia, 181 Pa. 588; Ely v. Ry. Co., 158 Pa. 233; Fee v. Columbus Borough, 168 Pa. 382; Weed v. Ballston, 76 N. Y. 329; Hogan v. West Mahanoy Twp., 174 Pa. 354.

OPINION BY MR. JUSTICE DEAN, January 3, 1898:

On November 1, 1895, in the evening, the plaintiff, a school teacher, in East Finley township, Washington county, was driving home from his school in a one-horse, two-wheeled Canton cart; in going along the highway, the right cart wheel struck and scraped a two inch iron pipe at the side of the road, the mare he was driving took fright, jumped to one side and kicked over the front of the cart; plaintiff was thrown backward out of the cart, and the mare ran away. He was seriously injured, his kneepan being broken into three pieces. The pipe was part of a feed line laid by defendant from a gas well in the township to its main, about a mile distant. At the point on the public road where the accident happened, a cut through a ridge at right angles to the road had been made for the roadbed, which last at the surface or wagon track was eight feet six inches wide; the gauge of plaintiff's cart wheel was five feet two inches. The defendant had laid its pipe on the bank above the cut, close to a post and rail fence, within about two feet horizontally from the track on the highway, but the height of the bank

above it; either from the effect of changes of the weather on iron, or by physical force, the pipe at this point had been moved from its original position, and was thrown in a curve, out from the fence and down into the cut, so as to be over on the wagon track about a foot. It was shown that this had been the situation of the pipe, for at least some weeks, and perhaps months before the accident.

Plaintiff, alleging his injury was caused by defendant's negligence in permitting the pipe to remain on the highway, brought suit for damages. At the trial in the court below, the statutory right to lay the pipe along the fence at the side of the highway was conceded; plaintiff averred however, that it was defendant's duty to keep it there and, having wholly failed in this duty, it was negligent. There was some conflict in the evidence as to the exact location of the pipe in the highway when the cart struck it. As plaintiff admitted that he had traveled the road almost daily, it was urged by defendant, he was either negligent in driving, on to him, a known obstructed road, or else negligent in not exercising care to avoid the obstruction by keeping further from it. The court submitted to the jury, four questions : 1. Did the evidence show the company negligently permitted the pipe to remain displaced, so as to endanger travel on the highway ? 2. Was this negligence the proximate cause of plaintiff's injury (the broken kneepan), or was it the not reasonably to be foreseen action of a vicious, easily frightened animal ? 3. Was the accident in any degree attributable to plaintiff's negligence ? If these three questions were answered in plaintiff's favor, then, 4. What damage did he sustain ? The verdict was for plaintiff in the sum of $1,178.75, and we have this appeal by defendant. Eighteen errors are assigned. The seventh to thirteenth inclusive allege error in not directing a verdict for defendant, and in submitting to the jury the evidence as to whether the alleged negligence, if proved, was the proximate cause of the injury. A careful perusal of the testimony satisfies us that the case was one for the jury, as the learned trial judge put it. In no view of the evidence would he have been warranted in peremptorily directing a verdict for defendant. Just what were the facts tending to show negligence by defendant were not beyond controversy, and, if established, the inferences that defendant claimed should be drawn

from them did not necessarily follow. Did the noise occasioned by the scraping contact of the iron tire cause the fright? Was this fright the natural and probable result of such a circumstance, or was it one incapable of ordinary foresight? Was the kick of the mare the last in the rapid succession of events, part of a natural whole, so linked together that the kick was not an independent intervening cause? Was the animal an exceptional one in habits and, therefore, one the defendant was not bound by ordinary care to prepare for? These and other inferences were all for the jury. If the pipe with knowledge of defendant had been in the middle of the road, and a stranger had in the dark driven over it, wrecked his vehicle and sustained personal injury, there would have been but one reasonable inference; negligence on part of defendant; if the displacement of the pipe, unknown to defendant, had been caused by an extraordinary storm, or by malice, immediately before the accident, there could have been but one reasonable inference; no negligence on part of defendant. But under the peculiar and disputed circumstances here testified to, it was certainly a case, both on the facts and inferences from them, for the jury; and all our cases from Hoag v. R. Co., 85 Pa. 293, down to Wilson v. R. Co., 177 Pa. 512, invariably so decide. Just how the plaintiff's knee was injured was for the jury; but assuming it to be the fact, as is highly probable, that it was from an immediate kick by the frightened animal, then, taking into view the usual character and habit of the horse when affrighted, was that a natural or probable result from the negligently misplaced pipe? The question is not whether defendant ought to have foreseen the kick, but could it have reasonably foreseen the fright? That the animal will then commit some unforeseeable act, dangerous to the driver or to those within reach of him, is almost as certain as that he will mend his pace at a stroke of the whip. As is said in Railroad Co. v. Hope, 80 Pa. 373: "The practical knowledge and common sense of the jury applied to the evidence steps in to determine whether the injury is the real proximate result of the negligence, or, by reason of intervening or independent causes, must be regarded as too remote, and the result not within the probable foresight of the party, whose negligence is alleged to have produced it." All the points raised by these seven assignments of error, touch the

same question. The instruction was clear, and is sustained by all our cases; therefore they are overruled.

The fourteenth to eighteenth assignments, inclusive, complain of error in the instruction as to contributory negligence. Counsel for defendant in his fourth written point in effect, asked the court to charge peremptorily, that plaintiff was guilty of contributory negligence, and therefore could not recover. This request was based on the assumption that plaintiff knew the pipe line was there and that by ordinary care he could have avoided striking it. The plaintiff did know it was there; whether from that fact ordinary care dictated he should walk to his home from the schoolhouse or drive miles around on some other road to reach it, in view of the nature of the obstruction, were questions for the jury; and whether taking his usual and direct road home by his usual method of travel, he could have avoided the pipe by ordinarily careful driving, was also for the jury. One who deliberately chooses an obviously dangerous way which by a little inconvenience he may avoid is held to be guilty of contributory negligence. But the nature of this peril and whether it could reasonably have been avoided, and whether care in driving was exercised, were all questions for the jury. Except in his refusal to peremptorily instruct for defendant the learned judge gave to the jury in substance exactly the charge asked for by defendant in its written points; the ninth and tenth prayers were affirmed in the language. presented, the court at the same time very properly calling attention, however, to the undoubted law that plaintiff was bound only to exercise ordinary care. The instruction as to what constituted negligence on part of defendant, the distinction between remote and proximate cause, and also what would constitute contributory negligence on part of plaintiff was unexceptionable.

The first, second, third, fifth and sixth assignments are to the rulings of the court on offers of evidence by plaintiff. As to the first assignment: against objection by defendant the court permitted a witness, W. B. Smith, to testify as showing the nature of the obstruction that his horse a few weeks before the accident to plaintiff had taken fright at the noise made by a scraping wheel on this pipe, and that his horse was a very quiet one. It was a·relevant inquiry, as to whether the pipe in the position it occupied on the road, as averred by plaintiff, was

dangerous to travelers by horse and vehicle. Those who traveled the road were qualified to testify from actual observation. It might not have excited fear in an ordinarily gentle animal; if it had that effect on such an animal, it was part of plaintiff's case to prove it. If his animal was an exceptionally timid one, easily frightened by sounds which did not disturb the ordinary horse, the defendant was not bound to foresee the danger and guard against it. In this view, the evidence was admissible.

As to the second assignment the court permitted a witness, R. B. Plants, to testify, against defendant's objection, that the pipe had been displaced, and was seen by him in the roadbed soon after it was laid; that he had passed there about once a week until after the September immediately preceding the accident in November, and it was still on the road. This was clearly evidence for two purposes: first, that the jury might infer in view of the other evidence, if out of place for a long time and until two or three weeks before the accident, that no change had taken place when that occurred; and second, that if observable by the ordinary highway traveler for this length of time, defendant must have known it. There was no error in admitting this testimony. The testimony of Clark Post, which is the subject of the third assignment, was to the same effect, and for the same reasons was properly admitted. The fifth assignment is to permitting plaintiff to testify that up to the time of his injury he had no knowledge of any other person coming into collision with the pipe. The purpose evidently was to meet the charge of contributory negligence. If the place where the accident occurred was very dangerous, and known to be so by plaintiff, it tended to support this charge; if he was ignorant of its peculiarly dangerous character that fact, at least in some slight degree, tended to weaken the charge. While his testimony in this particular was of slight weight, it nevertheless was for the jury, and was properly admitted.

The sixth assignment is to the admission of the testimony in rebuttal of Jennie McNay, against defendant's objection. It appeared from the evidence that plaintiff had purchased the mare from witness's father; defendant had offered evidence tending to show the mare was an unbroken, vicious animal, and that the owner who had reared her had not used her. The plaintiff attempted to show by the witness the reason the mare was not

used was because her father had sixteen or seventeen other horses, and had not work for all. This was competent evidence in rebuttal, and it was right to admit it.

The fourth assignment is to a part of the general charge. The court in substance stated to the jury that the plaintiff was admittedly injured by the frantic kick of his mare; that the burden was on him to show this act was caused by the negligence of the company; to successfully bear this burden he had offered evidence tending to show that the natural and probable result of leaving the pipe in the road was to frighten horses, because a vehicle would probably strike it; immediately preceding this statement the court had plainly instructed the jury that the testimony tending to show other vehicles had struck the pipe and the horses had in consequence taken fright in no way tended to prove plaintiff's vehicle had collided with the pipe, and he had in consequence been injured, but that the evidence was admitted only for the purpose of showing that the situation of the pipe was such that if an iron tire scraped it with force the sound was sufficient to terrify the ordinary horse. Appellant's counsel argues from a half paragraph picked out from the charge, not accompanied by the preliminary caution of the judge, that the effect was to permit the jury to find the essential fact that defendant's negligence resulted in plaintiff's injury, from evidence not offered and not admissible for that purpose. But taking all the court said on that subject there is no reason to assume the jury was influenced in finding the main fact from evidence admitted to prove another. Therefore the fourth assignment of error is overruled.

The case was well and ably tried on both sides by counsel in the court below. The charge of the court was full, clear, impartial, and without even technical error; the verdict in view of the finding of fact is certainly not excessive.

Therefore the judgment is affirmed.