## NEW YORK ESKIMO PIE CORPORATION v. RATAJ et al.

### No. 5289.

Circuit Court of Appeals, Third Circuit.

Sept. 27, 1934.

James Alan Montgomery, Jr., Layton M. Schoch, and Richard A. Smith, all of Philadelphia, Pa., for appellant.

Michael D. Hayes and Francis M. McAdams, both of Philadelphia, Pa., for appellees.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

The facts in this case were found by a jury in the District Court and are undisputed. The questions here involve the issue of the negligence of the defendant, the New York Eskimo Pie Corporation, and the difficult and abstract proposition of whether or not the negligent conduct or act of the de-

fendant was the "proximate cause" of the injuries of the plaintiff Josephine Rataj, a minor.

The defendant manufactures and sells a product of ice cream with a chocolate covering, known in the trade as "Eskimo Pie," and furnishes its dealers with a suitable receptacle in which it places its product daily, together with a cake of dry ice, weighing approximately one pound, in a paper bag, for refrigeration.

On the day of the accident, an employee of the defendant delivered "Eskimo Pies" to the store of John Rataj, one of the plaintiffs in this case and the father of the injured child. The employee took the bag containing the dry ice which was placed in the receptacle the previous day and threw it into the street in front of the store and residence of the plaintiffs. The bag contained a piece of dry ice that had not evaporated or melted in the meantime. It was triangular in shape and approximately one inch long, one inch wide at its apex, and about one-half inch thick. A block or cake of dry ice which weighs one pound is three and one-quarter inches long, three and one-quarter inches wide, and one and seven-eighths of an inch thick.

Children, who were playing near by saw vapor or "smoke" coming from the mouth of the bag lying in the street and went there to investigate it. One of them picked up the bag and removed the ice. After playing with it for a time, one of the children put the dry ice into a citrate of magnesia bottle, partly filled with water, and clamped the lever top down and began to shake it. About then the child's older sister, Josephine Rataj, who was fifteen years of age, saw the child, and, remembering that she had been cautioned against playing with bottles, ordered her to throw it away. She did not obey, and Josephine came from the house and forcibly took the bottle, which exploded in her hands, and she was seriously and permanently injured.

Dry ice is carbon dioxide, or $CO_2$, in solid form. At ordinary temperatures, it is in a gaseous state. By applying pressure, it may be liquified and, in turn, solidified, whence comes the product known by the trade name "Dry Ice." It has a temperature of 110 degrees Fahrenheit below zero. At normal temperatures, dry ice changes from a solid to gas rapidly and, increasingly so when placed in water and agitated. In the transition from solid to gas, its volume increases 500 times, and, when confined, as in a bottle, the pressure exerted naturally increases, and, if the container cannot withstand the expansion, it must burst. Because of its low temperature, dry ice will cause frostbite if part of the body is exposed to it for any length of time.

The court submitted the several issues of fact to a jury which found for the plaintiffs. A motion for a new trial was denied by the District Court, sitting en banc, and judgment was entered on the verdict for the plaintiffs. The defendant appealed.

The learned trial judge allowed the jury to determine the issues of fact raised by the pleadings, including whether or not dry ice was a dangerous or explosive substance and whether or not the negligence of the defendant was the proximate cause of the plaintiff's injuries.

The sole alleged error of the trial court is that the court erred in refusing to give binding instructions to the jury for the defendant. Such an assignment is valid, but it only raises the question of whether or not there was any substantial evidence, under the law, for the jury to consider. The defendant argues, under this assignment, that the initial act of the defendant in throwing the dry ice into the street was not negligent, and that the act was not the "proximate cause" of the plaintiff's injuries.

Whether or not dry ice is in the nature of or is an explosive is immaterial. Under normal temperatures, as above stated, dry ice and liquid carbon dioxide pass rapidly from a solid form to a gas, and in that process there is a comparatively great expansion, which naturally increases the pressure exerted on a container confining the carbon dioxide. This expansive quality of the substance is used to an advantage under certain conditions as an explosive in particular types of blasting.

At any rate, the defendant and its employees are chargeable with the knowledge of the expansive or "explosive" quality of dry ice just as they are with the knowledge that its low temperature will cause frostbite.

"In Pennsylvania, liability for negligence depends on the antecedent probability, not the mere possibility, of harmful results therefrom. The general test of liability is whether the injury imputed to the defendant is such that a person of ordinary intelligence would have foreseen it as the natural and probable outcome of his conduct." Rugart v. Keebler-Weyl Baking Company, 277 Pa. 408, 121 A. 198, 199.

Like all general rules, the one above is stated in broad language that requires amplification to fit the circumstances of this case. There is evidence from which the jury might

186

determine that the initial act of throwing the paper bag containing the dry ice into the street was negligent. Dry ice has at least two qualities, low temperature and its expansive property, that might make it both attractive and dangerous to children. The low temperature itself, of course, had nothing to do with the accident here. But there was evidence from which the jury might find, as it did, that, because of the expansive factor of melting dry ice, it was dangerous when confined.

The doing of a negligent act, even though it results in an injury, is not enough to create liability. Restatement of Torts, § 305, P. F. D. No. 2, p. 71. Under the Pennsylvania law, the consequences of negligence must be foreseeable. Snare & Triest Company v. Friedman (C. C. A. 3) 169 F. 1, 40 L. R. A. (N. S.) 367; Chesko v. Delaware & Hudson Company (C. C. A. 3) 218 F. 804; Dobie, Federal Procedure, § 144, p. 575. Even, if this rule is considered narrow and unsatisfactory, a broader one would not help the defendant in this case. Restatement of Torts, §§ 306, 308–319, P. F. D. No. 2, p. 71.

Under the Pennsylvania rule, to impute liability to the defendant, the injury must be such that under the circumstances the defendant should have foreseen it as the natural and probable consequence of its conduct. That does not mean that in this case it must have been able to anticipate the exact details from the time of its negligent act to the injury of the child by the explosion.

If the defendant should have realized that its conduct might cause injury to another in substantially the manner in which it was brought about, the injury will be regarded as the legal consequence of the act. Hess v. Coal Min. Company, 178 Pa. 239, 35 A. 990; Bunting v. Hogsett, 139 Pa. 363, 21 A. 31, 33, 34, 12 L. R. A. 268, 23 Am. St. Rep. 192; Potter v. Natural Gas Company, 183 Pa. 575, 39 A. 7.

The defendant is charged with the knowledge of the expansive character of dry ice and with the propensity of children to be attracted by it, and to be amused by confining "smoke and vapors" within bottles, without realizing the attendant dangers. There was sufficient evidence from which the jury could find these facts, and it so found. It is not necessary that the defendant should have foreseen the particular injury, its extent, the type of container used by the children, and other details.

The judgment is affirmed.