TIDWELL *v.* KAY'S OF NASHVILLE, INC., *et al.*

GANNON *v.* KAY'S OF NASHVILLE, INC., *et al.*

*(Nashville,* December Term, 1951.)

Opinion filed June 7, 1952.

WILLIAMS, CUMMINGS & WEST and HUGH C. HOWSER, all of Nashville, for plaintiffs.

DAN E. McGUGIN, of Nashville, for defendant Kay's of Nashville.

Roy A. Miles, of Nashville, for defendant Norvin Knowles.

Mr. Justice Prewitt delivered the opinion of the Court.

These are personal injury suits tried together, wherein the plaintiff Clayton Tidwell, a minor, suffered severe injuries when playing with dry ice which had been given him by the defendants. It seems that two small pieces of dry ice were given the plaintiff and his young friend William Carr, both about ten or eleven years of age. This ice was later placed in a small bottle with water, then a top placed on the bottle and later there was an explosion while young Tidwell had the bottle in his hand.

The trial judge directed a verdict in favor of the defendants. The Court of Appeals reversed, holding that there was material evidence that defendants were guilty of negligence and that the case should be submitted to the jury.

Certiorari has been granted and the case argued at the bar of this Court. There is no dispute about the facts. The defendants claim that it could not be reasonably foreseen what the results were from letting the plaintiff have the dry ice; and putting the dry ice in the closed container by plaintiff was an intervening cause of plaintiff's injury for which defendants were not liable; while plaintiff contends that the defendants are liable for giving this substance to a ten year old boy to play with.

In order to present the question of law arising, it requires a consideration of the evidence.

The following facts were developed by the plaintiff.

Clayton Walker Tidwell, about ten years old, lived in the neighborhood of the business house where Kay's of Nashville, Inc., sold ice cream. This business establishment was located on Church Street in Nashville, Tennessee. Plaintiff had bought ice cream at defendant's store before the day he was injured. The corporate defendant used dry ice to preserve its products. Dry ice is carbon dioxide in solid form. By varying the temperature, carbon dioxide may be reduced to a vapor, to a liquid or to a solid form. Dry ice requires a temperature of one hundred ten degrees Fahrenheit below zero. Carbon dioxide is a common gas that is always present in the atmosphere in a quantity of two hundredths of one per cent. It is very useful in proper proportions and quantities and is in common use. Dry ice is used in many industries to preserve foods and in others as explosives. When applied to the body this substance will cause severe frostbite or burns. It "smokes" when exposed to the atmosphere. When changing from the solid form of dry ice to a vapor, carbon dioxide expands. If the dry

ice is put into a container with no outlet and allowed to change to vapor, the result is an explosion. When used in this manner dry ice is very dangerous. The average man recognizes that there is danger in dry ice. Ordinarily people who handle it commercially know that it is dangerous; that it will burn human flesh and it will explode when it is confined and allowed to change to vapor because of the great expansion it undergoes in so doing.

On September 6, 1949, Clayton Walker Tidwell went to defendant's store with a friend, who was about eleven years old, to get some dry ice. Two employees of the store refused to let the boys have the dry ice. These boys were referred to defendant Norvin Knowles, who was "in charge" of the business of the corporate defendant. Mr. Knowles gave each of them a two inch cube of dry ice from the store. The boys explained to defendant Knowles that they wanted to play with it. After they left the store, the boys found an empty whiskey bottle and a cap that fit it. They put water in the whiskey bottle, broke the dry ice into small pieces and put them in the bottle with the water, screwed the top on the bottle, let it stand a few minutes and plaintiff "went to take the top off and let the smoke come out of the top of the bottle and it exploded as soon as I picked it up". He did not know it was dangerous.

Plaintiff was severely and permanently injured by this explosion. These defenses are strongly urged: (1) defendants could not reasonably foresee the results alleged and proved from letting plaintiff have the dry ice; (2) putting the dry ice in the closed container by plaintiff was an intervening cause of plaintiff's injury

for which defendants were not liable, and (3) defendant Knowles' act in giving plaintiff the dry ice was not ·chargeable to defendant Kay's.

The Court of Appeals was of the opinion that the giving of this dangerous substance to this minor was a negligent act and the proximate cause of the accident was the giving of the dry ice to the plaintiff and the placing of the substance in the bottle and the resulting explosion and damage to the plaintiff were the natural results of the tortious acts of the defendant.

The Court of Appeals cites *New York Eskimo Pie Corp.* v. *Rataj,* 3 Cir., 73 F. (2d) 184, 185, in support of its holding. The Court of Appeals holds that this case is direct authority for the conclusion reached and approves the reasoning.

The facts in the Rataj case were that on the day of the accident, an employee of the defendant delivered eskimo pies to the store of John Rataj, one of the plaintiffs in the case and father of the injured child. The defendant Eskimo Pie Corporation manufactures and sells a product of ice cream with a chocolate covering known in the trade as "eskimo pie", and furnishes its dealers with a suitable receptacle in which its product is placed daily, together with a cake of dry ice weighing approximately one pound, in a paper bag, for refrigeration. The employee took the bag containing the dry ice which was placed in the receptacle the previous day and threw it into the street in front of the store and residence of the plaintiff. The bag contained a piece of dry ice that had not evaporated or melted. Children who were playing nearby saw vapor or smoke coming from the mouth of the bag lying in the street and went to investigate. One of them picked up the bag and removed

the ice. After playing with it for a time, one of the children put the dry ice in a citrate of magnesium bottle partly filled with water and clamped the lever top down and began to shake it. About then, the child's older sister, Josephine Rataj, who was fifteen years of age, remembering that she had been cautioned against playing with bottles, ordered her to throw it away. She did not obey and Josephine came from the house and forcibly took the bottle which exploded in her hands and she was seriously and permanently injured.

In that case the court said:

"Whether or not dry ice is in the nature of or is an explosive is immaterial. Under normal temperatures as above stated, dry ice and liquid carbon dioxide pass rapidly from a solid form to a gas, and in that process there is a comparatively great expansion, which naturally increases the pressure exerted on a container confining the carbon dioxide. * * *

"At any rate, the defendant and its employees are chargeable with the knowledge of the expansive or 'explosive' quality of dry ice just as they are with the knowledge that its low temperature will cause frostbite."

Again, in the same case, the court said:

"If the defendant should have realized that his conduct might cause injury to another in substantially the manner in which it was brought about, the injury will be regarded as the legal consequence of the act. *Hess* v. *Berwind-White Coal Min. Co.,* 178 Pa. 239, 35 A. 990; *Bunting* v. *Hogsett,* 139 Pa. 363, 21 A. 31, 33, 34, 12 L. R. A. 268, 23 Am. St. Rep. 192; *Potter* v. *Natural Gas Co.,* 183 Pa. 575, 39 A. 7."

The defendants contend that the Rataj case, above quoted from and discussed, stands alone and was decided

in 1934 when dry ice was an obscure and little known substance, not then in general use; that in the last ten or twelve years dry ice has come into general use and now is an every day familiar article to adults and children alike, so much so that the little Tidwell boy testified that he had regularly been given dry ice for a long time prior to the accident by his neighborhood pushcart peddler and had seen it at school and had obtained some there, as well as seeing it in grocery stores and elsewhere.

It is true the negligence, to be actionable, must result in damage to plaintiff which defendant could have reasonably anticipated or foreseen. *Moody* v. *Gulf Refining Co.*, 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243; *Jones* v. *Stewart,* 183 Tenn. 176, 191 S. W. (2d) 439.

These cases are not in point for the reason that in the case now before us, the defendants placed the dangerous product in the hands of the small child and it continued in his possession until the injury occurred.

The law exacts of one who puts a force in motion that he shall control it with a skill and care proportionate to the danger created, 38 Am. Juris. Sec. 85, p. 743.

The dry ice, according to the proof, was a dangerous product and where defendant placed this product in the hands of a small child, the resulting injury was a probability and not a possibility.

The judgment of the Court of Appeals is affirmed.

TOMLINSON, Justice, dissents.