**PORT TERMINAL R. CO. et al. v. BRIMER.**
(No. 9290.)

Court of Civil Appeals of Texas. Galveston. May 23, 1929.

Rehearing Denied June 20, 1929.

Baker, Botts, Parker & Garwood, Garrison & Watson, Arterbury & Coolidge, and Roy L. Arterbury, all of Houston, for appellants.

Geo. W. Johnston, Ewing Werlein, and A. A. Collins, all of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee to recover damages for the burning of her property alleged to have been caused by the negligence of appellants.

The petition alleges, in substance, that a train of cars which was being operated by appellants over their railway near the premises of appellee became derailed, and that crude oil contained in one or more of the derailed cars escaped therefrom and ran onto appellee's land, and shortly thereafter became ignited from some unknown cause and started a fire which destroyed appellee's house and furniture, to her damage in the sum of $1,500. Negligence was alleged, in substance, in the following particulars: First, for negligently allowing oil to invade appellee's premises; second, in failing to take necessary and adequate steps and precautions to prevent fire from breaking out and destroying appellee's premises; third, in failing to place a watchman to guard against fire breaking out from natural causes or from negligent acts of third parties; fourth, in negligently permitting said oil to remain upon said property longer than was necessary and in failing to take reasonable and adequate steps to remove same therefrom; fifth, in negligently failing, after said fire broke out, to take reasonable and adequate steps and precautions to keep it from spreading to and destroying appellee's property; and that each of said acts of negligence was a proximate cause of the destruction of appellee's property.

The appellants answered by general demurrer and general denial.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $1,000.

No contention is made in appellants' brief that appellee was not damaged in the amount awarded by the verdict, nor that the fire which destroyed and damaged appellee's property was not caused by the ignition of oil which had escaped from appellants' premises; the only question presented in the brief being whether the evidence is sufficient to sustain the findings of the jury that the defendants failed to exercise ordinary care to prevent the oil from becoming ignited, and that such negligence was the proximate cause of the fire.

The evidence shows that oil escaping from derailed cars on appellants' railway ran down ditches along the sides of appellants' tracks until it reached a natural drain which runs under appellants' tracks and empties into a bayou which connects with the Houston Ship Channel. A branch of this drain runs through appellee's premises. Some time after the derailment of the cars, the escaping oil in the drain across appellee's premises became ignited, and the fire thus started consumed and injured property of

appellee to her loss and damage in the amount found by the jury.

Appellants' witness W. B. Drake testified:

"I am Superintendent of the Port Railroad Association and was such on July 5, 1926.

"I am acquainted with the circumstances surrounding a wreck and a fire down near Harrisburg on the date just mentioned. That wreck occurred at approximately eleven a. m. and I was there at eleven fifteen. I went personally to the scene of the wreck, and then took steps immediately with reference to the situation. * * * The steps I took with reference to guarding the situation, the ditch and the oil, etc., were substantially:

"In the beginning I had earthen dams put across our right-of-way ditches at different points below the derailment so as to hold the oil, with the idea of pumping it back into the tank cars as soon as the wrecking outfit got out there. After that work was done, I kept some of the section men there to patrol the property to keep trespassers away as far as possible. Prior to that time I had gone up and down, that is, had gone up and down the location warning people to stay away from the ditch as the oil was dangerous; there was a very hot sun and probably it would generate gas, and if they struck matches around there it might ignite even though they were standing away some from the ditch. I did that personally in the first instance before I put up any of those dams. I was not there when the fire broke out, but was a very few minutes afterwards. I was on my way back to the derailment at the time the fire started and reached Ellen Brimer's house about the time the fire department got there, which was about 1:10 of the same day. I left some men along there to guard the oil in the ditch, and sent the remainder of the gang back to Manchester to get some material to repair the track. I took steps to hold the oil so I could pump it back out of the ditch. I remained there about an hour on my first visit or until nearly twelve o'clock, and I came back at 1:10 expecting to meet the wrecking outfit there and take charge of it and their operations in re-railing the cars."

On cross-examination this witness says: "After the oil went down the ditch I put some watchmen there; I put three and told them to keep trespassers away and sightseers back from the ditch and not allow anybody to smoke around there. I stationed them at different points, and told them to walk up and down the ditch; they were supposed to stay right there, walking and patrolling the premises, going as far down as where the oil crossed under the S. P. tracks. I did not have any watchmen from the S. P. tracks down to the bayou; I went down there myself in the beginning and warned those people to stay away from it, and so I did not have any watchmen below the Southern Pacific tracks."

The fire started between the railroad tracks and the bayou and on or near appellee's premises. The derailment occurred in the city of Harrisburg, and a number of people were attracted to the scene, and the necessity for guarding the flowing oil from ignition through the carelessness of these sightseers was realized by Dr. Drake, who placed watchmen to protect the oil in the railroad ditches from such ignition, but did not so guard the oil in the drain across appellee's premises.

We think this evidence is sufficient to sustain the finding of the jury that appellants did not use ordinary care to prevent the oil on appellee's premises from becoming ignited. The fact that the fire started in that portion of the stream of oil which was not protected by watchmen, taken in connection with the inflammability of the oil and the presence of a number of people at the scene of the accident, are circumstances from which it could be reasonably inferred that if the same diligence had been exercised to prevent the ignition of the oil after it left the railroad right of way as was displayed in protecting the oil on the right of way, the fire would not have occurred, and the jury were authorized to find that the failure of appellants to use ordinary care to prevent the ignition of the oil was the proximate cause of the destruction of appellee's property.

The inflammable and dangerous character of crude petroleum oil is shown by the testimony of the witness Drake, and is a matter of common knowledge of which the courts will take judicial notice. While the circumstances of the derailment are not shown and appellants cannot upon this regard be charged with negligence in allowing the oil to escape, but, knowing the danger to property from the inflammable character of the oil and its easy susceptibility to ignition, they were under the duty to use ordinary care to protect the property of those upon whose premises the oil was discharged from the danger of fire.

This case rests upon the principle that where a destructive agency is set in motion without negligence, the person in charge of such agency is required to use ordinary care to prevent injury thereby, and in such case the exercise of ordinary care requires an alert diligence commensurate with the imminence of the threatened danger. This principle is declared and applied in Missouri Pac. Railway Co. v. Platzer, 73 Tex. 117, 11 S. W. 160, 3 L. R. A. 639, 15 Am. St. Rep. 771, and International & G. N. Railway Co. v. McIver (Tex. Civ. App.) 40 S. W. 438.

In the Platzer Case, a case in which the plaintiff recovered damages for loss caused by a fire which spread to plaintiff's premises from the right of way of the defendant railway company, the Supreme Court, speaking through the great Chief Justice Stayton, says: "The cases show that it is not important whether the origin of a fire be in negli-

gence, and that liability exists on the ground that the failure to use proper care to prevent the spread of fire lawfully kindled is negligence as clearly as in an originally unlawful kindling from which injury to another results."

There can be no difference, as affecting liability for damages, in the failure to use ordinary care to prevent the spread of fire and the failure to use such care to prevent the ignition of inflammable oil, the danger of which is known and realized by the party from whom it escapes.

We think the judgment should be affirmed, and it has been so ordered.

Affirmed.