Earl McClain SCOTT et al., Appellants,

v.

OSCAR EWING DAIRY COMPANY, Appellee.

Court of Appeals of Kentucky.

June 13, 1958.

Rehearing Denied Nov. 28, 1958.

Harry S. McAlphin, Louisville, for appellants.

Kent McElwain and McElwain, Dinning, Clarke & Winstead, Louisville, for appellee.

SIMS, Judge.

Earl McClain Scott, a twelve-year-old boy, lost the sight of his right eye as the result of the explosion of a bottle in which he and a young companion had put some "dry ice" and water. He brought action for damages against the Oscar Ewing Dairy Company, alleging that employes of the company had negligently made dry ice available to the children in the neighborhood. At the conclusion of the plaintiff's opening statement to the jury the court directed a verdict for the defendant. The plaintiff has appealed from the judgment entered on that verdict.

The opening statement asserted that the plaintiff's proof, as concerned the circumstances of the accident, would be: The driver of one of the dairy company's trucks emptied a quantity of dry ice on the street near a vacant lot in the city of Louisville in a neighborhood where young children were present. One of several young boys approached the truck and the driver asked him if he would like to have some of the dry ice. This boy answered "yes" and he and two companions each took some and carried it in a cardboard box to the area of a housing project in which they and the plaintiff lived. They met the plaintiff and gave him some of the dry ice. He broke the ice into small pieces and put it in a bottle in which he also had put some water. Another young boy who was with him put a cap on the bottle and they threw the bottle into some grass a short distance away, expecting that the vaporizing of the ice in the water would blow the top off the bottle. This did not happen, however, and after a few minutes the plaintiff went over to pick up the bottle, whereupon it exploded in his face. Dry ice is a solidified carbon dioxide that undergoes a normal process of vaporization, which is accelerated by placing it in water.

The trial court's opinion was that the dairy company was not negligent because the actions of the plaintiff and his companion that resulted in the plaintiff's injury were not foreseeable. The court relied upon Latta v. Brooks, 293 Ky. 346, 169 S.W.2d 7.

In the Latta case, a building contractor had left some unslacked lime in a wheelbarrow on premises where he was building a house. Some boys playing around the premises found the lime, and in the course of their play one of the boys threw a handful of lime into the face of another boy, severely burning his eyes. A directed verdict for the building contractor was upheld on appeal. After giving recognition to the ordinary rule that care must be exercised to protect children against things falling in the category of dangerous instrumentalities, the court said (169 S.W. 2d 7, at page 9):

" * * * The question is, Does ordinary unslacked building lime fall within that category? We think not. Lime is a common article of building material and is used generally in construction work. It is widely used also

for whitewashing the exterior and interior of buildings and fences, and for sanitary purposes. It is practically harmless in its unslacked form, though it is apt to burn or irritate the human body if it comes in contact with it after the substance has been slacked or moistened. We think that we would be going far afield should we place ordinary, unslacked lime in the same category with turntables, engines, gunpowder, dynamite caps and gasoline tanks. \* \* \*"

In Haar v. Vogelman Bakery Co., 312 Ky. 307, 227 S.W.2d 423, two young boys went to a garage maintained by a bakery company and picked up a can of gasoline that was standing by a pump. They had some explosive caps with them and they smeared some of the gasoline on the caps. One of the boys then struck the caps with a rock, causing them to explode. The flame set the gasoline in the can on fire, and one of the boys in an effort to put out the fire kicked the can of flaming gasoline, causing some of it to be thrown against the other boy so as to inflict severe burns. A demurrer to the complaint alleging these facts was sustained, and on appeal the judgment dismissing the complaint was affirmed. The basis for the decision was that gasoline is a product in common use and the bakery company could not be required to anticipate that children would use it in such an extraordinary way.

In Galloway v. Texas Construction Co., La.App., 150 So. 103, a construction company had left a partially empty paint barrel in a place accessible to children. One of a group of children inserted a lighted firecracker in the bunghole, which caused an explosion injuring several of the children. In holding that the construction company was not liable, the Louisiana Court applied the rule that where substances not inherently dangerous can be made dangerous by unusual and extraordinary uses, the person handling such substances is not required to anticipate such unusual and extraordinary uses.

In Juntti v. Oliver Iron Mining Co., 119 Minn. 518, 138 N.W. 673, 42 L.R.A.,N.S., 840, children picked up some carbide on the premises of a mining company, placed it in water so as to generate gas, and then set fire to the gas, causing an explosion. The complaint alleged that the mining company *knew* that children were accustomed to use carbide in that way. The Minnesota Court held that in view of the allegations as to the company's knowledge of the manner in which children were accustomed to use carbide, the complaint stated a cause of action.

■ We conceive the proper rule to be that where a substance is not inherently dangerous to children, and can be made dangerous to them only by an unusual or extraordinary use, the possessor of the substance is not liable for injury to children resulting from an unusual or extraordinary use unless it is shown that he knew or should have known that children were accustomed to put the substance to such a use. Cases supporting this view may be found in the annotation in 10 A. L.R.2d 22.

■ Dry ice is a product in ordinary commercial use and when used for its intended purposes is not dangerous. It becomes explosive only when confined in an airtight container. The plaintiff here did not offer proof of any custom of children to use dry ice for explosive purposes. Accordingly, it is our opinion that the defendant was not charged with foreseeability that children playing with the dry ice might be injured by an explosion.

We are not unaware of the decisions in New York Eskimo Pie Corp. v. Rataj, 3 Cir., 73 F.2d 184, and Tidwell v. Kays of Nashville, Inc., 194 Tenn. 205, 250 S.W.2d 75. In both of those cases, under facts strikingly similar to those in the case before us, it was held that the question of negligence in making dry ice available to children, who put it in a bottle with a resulting explosion, was for the jury. In

the Rataj case the court said (73 F.2d 184 at page 186):

"The defendant is charged with the knowledge of the explosive character of dry ice *and with the propensity of children to be attracted by it, and to be amused by confining 'smoke and vapors' within bottles,* without realizing the attendant dangers. There was sufficient evidence from which the jury could find these facts, and it so found. * * *" (Our emphasis.)

If the foregoing quotation means that the defendant was chargeable as a matter of law with knowledge of the propensity of children to amuse themselves with the explosive characteristics of dry ice, we cannot agree, because we do not believe such propensity is a matter of such common knowledge as to come within the scope of judicial notice. On the other hand, if the quotation means that there was *evidence* upon which to base a finding of the defendant's knowledge of such propensity, then we do not have such evidence here.

In the Tidwell case the court commented upon the fact that in many industries dry ice is used as an explosive. The court said (250 S.W.2d 75, at page 76):

"* * * The average man recognizes that there is danger in dry ice. Ordinarily people who handle it commercially know that it is dangerous; that it will burn human flesh and it will explode when it is confined and allowed to change to vapor because of the great expansion it undergoes in so doing."

The court concluded that the dry ice, *according to the proof,* was a "dangerous product."

█ It is not clear whether the Tennessee Court was relying entirely upon the *proof,* or was invoking some judicial notice. We are not prepared to take judicial notice of the fact that children know of and are attracted by the explosive qualities of dry

ice, and as hereinbefore stated, there is no proof in the record upon which to base a conclusion that the defendant knew or should have known of such fact.

The judgment is affirmed.

MILLIKEN, Judge (dissenting).

I believe this is a matter for a jury to determine. To young children dry ice appeals like "magic" and the "magic" in this case was potentially dangerous in inexperienced hands.