**Bennetta Sue Baggett, Plaintiff-Appellee, v. Ashland Oil & Refining Company, a Corporation, Defendant-Appellant.**

Gen. No. 51,625.

First District, First Division.

March 4, 1968.

Rehearing denied April 4, 1968.

 ██

Vogel & Vogel, of Chicago (L. H. Vogel and Conrad F. Floeter, of counsel), for appellant.

James A. Dooley, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an appeal by defendant, Ashland Oil Company, from a judgment entered upon the verdict of a jury in favor of plaintiff, Bennetta Sue Baggett, in the sum of $140,000 for injuries alleged to have been sustained by her as a direct and proximate result of the negligence of the defendant in its ownership, maintenance and control of an oil well pump.

The oil pump in question was located about seventy-five feet from the rear of the Baggett residence on premises owned by plaintiff's father. There was a gate valve or faucet attached to the pump which could be easily turned, and from which would run crude oil. There was no fence or signs on the well or pump, warning third persons or prohibiting them from turning the faucet to obtain the oil. There was no gate or lock on the valve of the pump. The pump was tended to each day by defendant's pumper; he would see that the motor was in good working order and test it, turning on the valve to see the pressure. On many occasions children would play on the pump itself using it as a kind of teeter-totter, and they would also turn on the valve and allow crude oil to run out of it; it was uncontradicted that these occurrences often took place in the presence of the pump-

437

er, but he did nothing about it. There was testimony to the effect that at a time, six months before the incident in which the plaintiff was injured, plaintiff's father had a conversation with a man driving a pickup truck with Ashland Oil Company written on the side of it, at which time plaintiff's father asked the man if he would erect a fence around the pump to protect the children. The man in the truck said he would see about it.

The occurrence out of which this lawsuit arises took place between 4:00 and 5:00 p. m. on September 23, 1958, in Rumsey, Kentucky, an oil-producing area. At this time, plaintiff was thirteen years of age and resided on a farm with her parents and seven brothers and sisters, ranging in age from three to seventeen years. In the one-mile area around the pump there were about fifty children. The plaintiff's mother, Mary Elizabeth Roy (who had remarried since the death of her husband in 1962), testified that on the day in question she had lit a fire in the stove shortly before 3:15 p. m., at which time Bennetta Sue would return home from school. She further testified that she used crude oil from the well, on occasion, for the purpose of starting fires in the stove, but that this oil was not obtained directly from the pump; rather, it was taken from a large can that had been allowed to sit on the top of the brooder house overnight. When Mrs. Roy left the house to water the hogs, between 4:00 and 5:00 p. m., she encountered the plaintiff entering the house carrying a bucket of milk. The plaintiff's mother testified that at this time a fire was visible in the stove. Later, Mrs. Roy heard an explosion, raced back to the house, and found that her daughter had already been taken to the hospital. She stated that Bennetta Sue had never witnessed her starting a fire with the oil from the large can.

The plaintiff testified that on the day of the occurrence she returned home from school and went to milk the cows. She brought the milk in the house and started to

438

prepare some potatoes for cooking. She then looked in the stove to see if there was a fire burning, and seeing none, went out to the defendant's pump to get some oil. She turned the faucet on the pump and filled an eight- to ten-ounce can about two-thirds full. She further testified that she then returned to the house and stirred the ashes in the stove to see if there were any "live ones." Concluding that the fire was completely out, she poured the crude oil into the stove, and there was an explosion. Plaintiff's dress caught on fire and she was severely burned.

On appeal, the defendant contends:

(1) That the trial court erred in denying its motion for a directed verdict and its motion for judgment notwithstanding the verdict because;

a. No act or omission of defendant was the proximate cause of plaintiff's injuries, and

b. No competent evidence was introduced at trial showing that defendant was guilty of any negligence or misconduct.

The defendant claims that in any event a new trial should be granted because of the following errors:

(1) The court erred in allowing plaintiff's brother, an ironworker, to give expert testimony regarding the mechanical operations of oil well pumps and the chemical composition of crude oil, without having been qualified as an expert in those fields;

(2) In admitting photographs of other oil wells which had not been seen by any witness;

(3) In allowing testimony that children had played upon defendant's oil well pump when this was an irrelevant issue considering the fact that the act causing plaintiff's injury occurred in plaintiff's home;

439

(4) In allowing into evidence certain photographs which were posed by plaintiff to dramatize and exploit her injuries which were calculated to inflame and prejudice the jury.

(5) The amount of damages awarded were the result of passion, prejudice and sympathy on the part of the jury; and

(6) That the verdict of the jury was contrary to the manifest weight of the evidence.

■■■■■ The defendant argues that it is clear that no question of fact existed concerning the issues of negligence and proximate cause warranting the submission of these issues to the jury, and therefore, the court was in error in not directing a verdict for defendant, or in the alternative, entering a judgment n. o. v. The same standard is applicable in deciding whether to grant motions for directed verdicts or judgments n. o. v., and the trial judge ought to direct verdicts and enter judgments n. o. v. ". . . only in those cases in which all of the evidence when viewed in its aspect most favorable to the opponent so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 229 NE2d 504, at pages 513–514. Therefore, in determining whether the trial judge was correct in submitting the issue of defendant's negligence to the jury we must, in reviewing the evidence, decide whether all of the evidence on the issue of negligence so overwhelmingly favored defendant that a verdict entered for plaintiff could never stand. We point out that both parties seem to be in complete accord that the laws of Kentucky and Illinois are not materially different in regard to the issues dispositive on this appeal.

The evidence adduced at trial established the fact that the defendant owned, exclusively controlled, and maintained an oil well and pump on premises owned by

plaintiff's father, where she resided. There were eight children living on the Baggett farm, and in a one-mile area surrounding the pump, there were approximately fifty more children. The pump was not fenced. The faucet from which the crude oil could be obtained was not locked and could be easily turned, and no warning signs had been posted by defendant. Expert testimony for plaintiff established the fact that crude oil can, under certain circumstances, be as dangerous as nitroglycerin. It was uncontradicted that defendant's pumper had been present when children had played on and about the pump and he had neither warned them nor attempted to prevent them from continuing their activity. There was also testimony to the effect that a request had been made of one of defendant's employees to fence the pump (for the purpose of protecting the children) about six months prior to the time of the accident, and that nothing had been done to remedy the condition.

 What will constitute reasonable care in a particular case where negligence is alleged depends upon all of the facts and circumstances of the case, including any disadvantages or disabilities of the persons involved and the danger of injury to be avoided. ILP, Negligence, § 24. "The creator of certain conditions dangerous and hazardous to children because of their immature appreciation of such dangers and hazards must be held to a certain standard of conduct for the protection of such children in accordance with the attendant circumstances and conditions." Kahn v. James Burton Co., 5 Ill2d 614, at Page 622, 126 NE2d 836. Of course, a party can only be held to such a standard of reasonable care as is consonant with the foreseeable risk of injury. Kuhn v. Goedde, 26 Ill App2d 123, 167 NE2d 805. We have concluded that the jury, in the instant case, could reasonably have found from the evidence that the defendant was negligent in failing to prevent the indiscriminate use

of a dangerous substance (see Port Terminal R. Co. v. Brimer (Texas), 19 SW2d 111, 112 (1929)) under its control in an area inhabited by many children, and that serious injury was a foreseeable result of said negligence. In any event, we cannot say that all of the evidence introduced at trial so overwhelmingly favored defendant that a verdict for plaintiff, based upon that evidence, could never stand.

The defendant next contends that no act, or omission of it, was a proximate cause of plaintiff's injury, arguing in its brief that: "The single fact most closely associated with plaintiff's injury is her act of pouring oil on the fire in the cook stove in her home. What then is the significance of where or how the plaintiff may have obtained the oil?"

We cannot agree with defendant's contention that there is no significance to the way in which the plaintiff obtained the oil in the instant case. The Illinois Supreme Court stated in Seith v. Commonwealth Elec. Co., 241 Ill 252, at page 259, 89 NE 425:

> To constitute proximate cause the injury must be the natural and probable consequence of the negligence, and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of the negligence. It is not necessary that the person guilty of a negligent act or omission might have foreseen the precise form of the injury; but, when it occurs it must appear that it was a natural and probable consequence of his negligence.

██ The question of proximate cause is generally one for the consideration of the jury. Merlo v. Public Service Co., 381 Ill 300, 318, 45 NE2d 665. Only when the facts are not in dispute, and there can be no difference of opinion among reasonable men as to the inferences

to be drawn from them, does the issue of proximate cause become a question of law for the trial judge. Philabaum v. Lake Erie & Western R. Co., 315 Ill 131, 145 NE 806. We have concluded that the trial judge was correct in allowing the jury to consider the issues of proximate cause in the instant case. Although the precise form of the injury might not have been foreseeable, the jury might reasonably have found from the evidence that defendant's negligent act, allowing children to obtain possession of crude oil, a dangerous substance, under circumstances where the oil was readily available for use in cooking, naturally led to the kind of incident in which the plaintiff was injured; and that an ordinarily prudent person ought to have foreseen the injuries sustained by plaintiff as a natural and probable consequence of his negligence.

 The defendant cites Haar v. Vogelman's Bakery, 312 Ky 307, 227 SW2d 423 (1950), claiming it is factually similar to the instant case. There an eight-year-old boy sought damages under the "attractive nuisance doctrine." The court stated that each attractive nuisance case was to be decided on its own particular facts. In the case at bar, plaintiff did not proceed on the basis of the attractive nuisance doctrine nor was plaintiff a trespasser on defendant's property—an essential element of the doctrine. In the Haar case the plaintiff was burned when a playmate accidentally kicked a bottle of flaming gasoline onto him; the gasoline had been obtained by the children at defendant's garage. The court held that defendant had not been negligent in allowing the children to obtain the gasoline, because gasoline was in common household use and was not inherently dangerous. Crude oil, however, the substance involved in the instant case, is inherently dangerous. Hobart v. Sohio Petroleum Co., 255 F Supp 972 (1966). The court in Haar also found that the intervening action of plaintiff's playmate was

443

the proximate cause of the injuries sustained; in the case at bar, there was no third-party intervention to break the chain of causation from defendant's negligent act to plaintiff's injury. We have concluded, therefore, that the Haar case is not determinative because it is distinguishable on legal issues raised, and is also inapplicable on the facts.

The defendant also cites Dahl v. Valley Dredging Co., 125 Minn 90, 145 NW 796 (1914). In that case plaintiff's three children trespassed on defendant's property and obtained some naphtha which defendant's employees had used for the purpose of "priming" an engine. The children threw the naphtha onto a burning pile of waste; the naphtha flared up and the children were badly burned. The court ruled that naphtha was a substance less dangerous than gasoline, and that defendant had no reason to anticipate that the children would come onto their property and take the naphtha from a shelf where it had been securely placed. Dahl is clearly inapplicable on the facts to the instant case in which an inherently dangerous substance was involved, and Ashland Oil Company had notice of the presence of children about their oil well and pump.

Greater Louisville First Federal Savings & Loan Ass'n v. Stone (Ky), 242 SW2d 739 (1951), cited by defendant was decided on the basis of the Haar decision which we have already found to be not in point. Scott v. Oscar Ewing Dairy Co. (Ky), 317 SW2d 477 (1958), involved dry ice, which is not an inherently dangerous substance, and is clearly inapplicable on the facts. Giddings v. Superior Oil Co., 106 Cal App2d 607, 235 P2d 843, was decided on the grounds that an oil well pump was not an attractive nuisance within the strict definition of that cause of action, and therefore, is distinguishable from the case at bar. The decision in Sinclair Prairie Oil Co. v. Smith, 186 Okla 631, 99 P2d 903, was also based upon the special requirements of the attractive nuisance doctrine. Fur-

thermore, in that case the defendant had received no notice, prior to the accident, of the presence of children about its oil well pump, and the court ruled that the swing of the pump, upon which the child was injured, was not inherently dangerous.

 The remaining questions raised on this appeal concern various rulings made in regard to the evidence introduced at trial. Defendant first contends that it was error to allow Charles Baggett, plaintiff's brother, a twenty-five-year-old ironworker, to testify as an expert concerning the mechanical functions of oil well pumps and the chemical composition of crude oil. Counsel maintains that the court abused its discretion in allowing "this unqualified witness" to give expert opinions, and specifically sets forth verbatim answers of the witness which are, as follows:

A. This counterweight turns over these legs or poles that come down from this part, makes a complete arch, raises in back of the pump to let the head of it come down, as you can see the object going in the well itself to bring out the oil, and it comes out through a pipe from there down to the base of it and it runs down to the storage tanks.

A. Yes sir. The sucker or stem goes down to bring the oil out of the ground and makes the thing go as you can see, right on the head of the pump, and also the motor, the gasoline motor has a noise.

A. Well, the oil that stands for a while the gas evaporates from the oil and it isn't as explosive or flammable.

We have carefully examined the record and conclude that this witness was not expressing an opinion as an expert witness, but rather was properly testifying to facts which he had observed through the years and were part of his own personal experience. See In re Estate of

445

Pohn, 67 Ill App2d 227, 214 NE2d 553. The first two answers quoted by defendant were made in response to questions concerning photographs of the well and pump located on the Baggett premises; and the third answer was similarly made in response to a question concerning the aforementioned well and pump. The witness was clearly testifying concerning facts he had long been familiar with through his everyday experience. Moreover, his testimony was substantially corroborated by plaintiff's expert witness. We fail to see how the defendant was prejudiced by this testimony. The defendant cites the cases of People v. Fiorita, 339 Ill 78, 170 NE 690, and People v. Green, 28 Ill2d 286, 192 NE2d 398, in support of his position. We find these criminal cases, dealing with the subject of the necessary qualifications of an expert witness, distinguishable in that we have concluded that the witness in the instant case was not expressing an opinion as an expert.

The defendant next contends that error was committed in admitting six photographs portraying other oil wells and pumps which had been fenced. On direct examination, Charles Baggett testified as to the occurrence in which plaintiff's father asked an employee of defendant to put up a fence. He further testified that he had lived in and around the community for many years prior to the date of the accident, and that during that time he had seen wells similar to the one on the Baggett premises which, unlike defendant's pump, had been completely fenced. Photographs were then submitted to Charles Baggett which portrayed various pumps and wells which were fenced. The witness testified that the pumps in the photographs were similar to the one involved in the instant case, and that he had seen that "type" of well in the surrounding community. Counsel for defendant objected on the grounds that isolated instances did not establish practice and custom in a trade.

The court received the photographs into evidence over objection.

 Defendant cites the cases of Brownlie v. Brownlie, 357 Ill 117, 191 NE 268, Kooyumjian v. Stevens, 10 Ill App2d 378, 135 NE2d 146, Brennan v. Leshyn, 51 Ill App 2d 132, 201 NE2d 167 and Schoolfield v. Witkowski, 54 Ill App2d 111, 203 NE2d 460, in support of its assertion that: "It is fundamental that in order to have a photograph admitted into evidence it is necessary that the photograph be identified by a witness as a portrayal of certain facts relevant to the issue and verified by such witness on personal knowledge as a correct representation of the facts." We agree with defendant's statement of the law in regard to the admission of photographs into evidence. However, we cannot agree with its conclusion that the principles of law, previously enunciated, when applied to the facts of the case at bar, establish the proposition that the admission of the photographs into evidence was error.

 The witness testified to the fact that he had seen certain wells in the area surrounding his home which were fenced. The lack of fencing about defendant's pump and the existence of fencing on similar pumps located in neighboring communities was certainly relevant to the issue of the defendant's exercise of due care, or lack thereof. Furthermore, the witness testified that the photographs were a correct representation of the fact he testified to; i. e., that certain pumps in neighboring communities had been fenced. The defendant did not object to the oral testimony of Charles Baggett, and we conclude that the photographs merely explained the witness' oral testimony concerning other wells he had seen that were fenced, and enabled the jury to apply the testimony more intelligently to the facts shown. Department of Public Works v. Chicago Title & Trust Co., 408 Ill 41, 95 NE2d 903. The trial judge did not abuse his discretion in allowing the photographs into evidence.

The defendant next contends that it was error to admit testimony of plaintiff's witnesses concerning the fact that children played on and about the pump and turned on the gate valve, allowing the crude oil to run out of the pump. Defendant argues that this testimony was irrelevant and immaterial. We cannot agree. The testimony was relevant and material to the issue of defendant's knowledge, through its agents, of the fact that children were playing about its pump and were also coming in contact with an inherently dangerous substance within its control. The case cited by defendant in support of its contention, Waugh v. Cander, 29 Ill App2d 408, 173 NE2d 860 is distinguishable. There in a wrongful death action the defendant's wife who was riding in defendant's car was rendered unconscious and did not regain consciousness until later in the hospital. She was improperly permitted over objection to detail her injuries although plaintiff's counsel offered to stipulate that her loss of memory was genuine and caused by the collision. We fail to see how this case is helpful to defendant.

Error is also assigned to the admission of certain photographs taken of plaintiff's body one month and six months after the occurrence. The defendant urges that these exhibits were inflammatory, had the natural effect of evoking sympathy, and were merely cumulative to medical testimony of plaintiff's witnesses. The defendant cites Smith v. Ohio Oil Co., 10 Ill App2d 67, 134 NE 2d 526. In Smith the court held that the use of a plastic model of a human skeleton as an aid in explaining the medical testimony of a physician was relevant, legitimate and helpful, and contained nothing emotional or dramatic in character. The court held that the question of relevancy of demonstrative evidence is primarily one to be resolved in the discretion of the trial judge, pointing out, however, that the admission of exhibits used only for

dramatic effect or emotional appeal would constitute reversible error. In applying the standard of the Smith case, to the facts in the case at bar, we conclude that there was no abuse of discretion in permitting these photographs to be viewed by the jurors. We believe these exhibits were useful to the jury as an aid in comprehending the extent of plaintiff's physical injuries.

 Finally, defendant contends that the verdict of the jury was contrary to the manifest weight of the evidence and was the result of passion and sympathy. Defendant argues that there was no evidence introduced that it had breached any duty owed to plaintiff. We have already reviewed the evidence introduced at trial on the issue of defendant's negligence and found it sufficient to overcome a motion for directed verdict or judgment n. o. v. We now conclude that the judgment of the jury was not against the manifest weight of the evidence, because an opposite conclusion on the issue of defendant's negligence is not clearly evident, and disputed questions of fact were for the jury to resolve. Prowell v. Twin Mills Lumber Corp., 79 Ill App2d 401, 223 NE2d 749.

The defendant concedes that under the law of Kentucky, a child between seven and fourteen years of age is presumptively not chargeable with contributory negligence. Dixon v. Stringer, 277 Ky 347, 126 SW2d 448, however, he says the presumption is rebuttable. United Fuel Gas Co. v. Friend (Ky), 270 SW2d 946 (1954).

The defendant argues that the evidence indisputably rebuts the presumption that plaintiff was not guilty of contributory negligence. The law in Kentucky on this issue was set down in the case of Williamson v. Garland (Ky), 402 SW2d 80 (1966), where it was stated at page 82:

Henceforth, when an issue is presented respecting the contributory negligence of a minor plaintiff sev-

en or more years of age, unless the contributory negligence (or lack of it) is established as a matter of law, the jury shall be instructed that the minor is charged with the duty to exercise care for his own safety, commensurate with that degree of care usually exercised by an ordinarily prudent minor of the same age, intelligence and experience of the plaintiff.

 The question of the exercise of due care by the plaintiff, in the case at bar, was a factual one for the resolution of the jury under proper instructions. We have examined the instructions given and have concluded that the jury was properly charged on this issue.

 We cannot say, after reviewing the evidence relating to plaintiff's injury, that the amount of damages awarded were the result of passion, prejudice and sympathy. No useful purpose would be served here by detailing the injuries. Suffice it to say that the verdict of the jury is within the range of the testimony in the record.

For the reasons given, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

ADESKO and MURPHY, JJ., concur.