VICTOR E. BIEHLER *et al.*, Plaintiffs-Appellants, *v.* WHITE METAL ROLLING & STAMPING CORPORATION *et al.*, Defendants-Appellees.

(No. 74-70; ▮▮▮▮▮▮▮▮)

Third District—July 25, 1975.

*Rehearing denied August 19, 1975.*

436

Glenn J. Church, Ltd., of Peoria, for appellants.

McConnell, Kennedy, McConnell & Morris, of Peoria (William J. Thomas, of counsel), for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiffs Victor and Marian Biehler brought this product liability action against defendants White Metal Rolling and Stamping Co. (hereafter called "White Metal") and Sears, Roebuck and Co. (hereafter called "Sears") to recover damages for personal injuries caused by the collapse of an allegedly defective aluminum combination ladder. After a jury trial, a verdict was returned for defendants upon which judgment was entered. Plaintiff's post-trial motion was denied. On appeal, plaintiffs contend they were denied a fair trial as a result of defendants' abuse of discovery and because of numerous errors which occurred during trial.

The record shows that plaintiffs purchased from Sears a 7-foot combination stepladder manufactured by White Metal. Plaintiffs had seldom used the ladder, and on April 3, 1969, while Victor Biehler was coming down from the third step, the stepladder collapsed and tipped to the right. As a result of the fall, plaintiff sustained multiple fractures of the bones in his left ankle, which caused the left leg to be shorter than the right with a 35-percent loss of use.

The parties presented conflicting expert testimony regarding the cause of the fall. Plaintiffs' witness, Dr. John McNabb, an engineering professor experienced in stress analysis, testified that, in his opinion, the collapse was caused by defective design in that the front side rails of the ladder were only one-twentieth of an inch thick, and the rails buckled because they were too thin to bear the weight placed on them.

Defendants' expert, Earl Records, was the White Metal engineer chiefly responsible for the design and manufacture of the ladder. He testified that the bottom portion of the front side was designed to move outward when weight was applied to the steps, and therefore it could not have spontaneously buckled inward as indicated by plaintiffs' witness. Defendants' expert further testified that in his opinion the distortion of the right front side rail was caused when the ladder tipped to the right and struck a planter at which time a sudden force was applied to the ladder.

In support of plaintiffs' primary contention, that they were denied a fair trial as a result of defendants' continuing abuse of discovery, reference is made to numerous delays and instances of noncompliance appearing in the record. In fact, defendants in their brief admit: "[I]t is patently obvious that the defendants were delinquent with respect to

filing objections to interrogatories, answers to interrogatories and in complying with orders for the production of documents, etc."

During the 3 years after the complaint was filed and before trial, plaintiff served four sets of interrogatories on defendants and filed three motions to produce documents and photographs. These procedures can best be summarized by the following table:

| Plaintiffs' Discovery | Date Ordered for Response | Date of Actual Response Sears | White |
|---|---|---|---|
| Inter. Nos. 1-30 | 3-12-71, 7-16-71 11-2-71 [1] | ———— 12-9-71 | 8-24-71 11-23-71 [2] |
| Inter. Nos. 31-50 | 5-21-71 [3], 7-16-71 11-2-71 [1] | ———— 12-9-71 | 8-24-71 11-23-71 [2] |
| Inter. Nos. 51-58 | 7-25-72 | 12-12-72 | 11-27-72 |
| 1st Motion to Produce | 9-7-72, 12-1-72 | Not in Record | Not in Record |
| Inter. Nos. 59-105 | 1-11-73, 3-12-73 5-23-73 [4], 6-7-73 [4] | Not in Record | 5-11-73 |
| 2nd Motion to Produce | 3-2-73, 5-23-73 [5], 6-7-73 | 5-11-73 7-20-73 [6] | 5-14-73 7-16-73 [6] |
| 3rd Motion to Produce | 5-4-73, 5-23-73 6-7-73, 7-24-73 | ———— 7-20-73 | ———— 7-24-73 |
| Int. Nos. 106-115 | 5-23-73, 6-7-73 7-24-73 [4] | 7-31-73 | 7-16-73 |

In order to elicit responses to interrogatories and motions to produce, plaintiffs had to obtain 15 court orders for answers and responses by dates certain. In nearly every case, the answers and responses were filed after the dates ordered. On seven occasions plaintiffs filed motions re-

[1] Sears ordered to answer Nos. 1-50; White Metal ordered to give supplemental answers to six interrogatories for which the 8-24-71 answers were incomplete.

[2] Supplemental answers which were ordered by 11-2-71.

[3] On April 23, 1971, the circuit court sustained defendants' objections to certain interrogatories, and did not order a date for response. Answers were due 28 days from the date of the order under Ill. Rev. Stat. ch. 110A, § 213.

[4] Sears ordered to answer.

[5] Both defendants were ordered to comply with 2nd paragraph of 2nd Motion to Produce and with 3rd Motion to Produce by 5-23-73. Letters from defendants furnished plaintiffs on 5-11-73 (Sears) and 5-14-73 (White Metal) were not an adequate response to 2nd Motion to Produce.

[6] Defendants' responses to 2nd paragraph of 2nd Motion to Produce, which had been ordered filed by 5-23-73 and 6-7-73.

questing sanctions against defendants under Supreme Court Rule 219(c) (Ill. Rev. Stat., ch. 110A, § 219(c)). Four of these motions asked for judgment against defendants and other sanctions. No sanctions were imposed until the day trial commenced when the trial judge ruled upon plaintiffs' fourth motion for judgment by stating that he "would be receptive during this trial, for Plaintiff's desire for specific sanctions" regarding introduction of evidence where discovery of that particular matter had not been fulfilled. We interpret this to mean that, upon a showing by plaintiffs that any evidence sought to be introduced by defendants had not been adequately disclosed in pretrial discovery, the court would bar the testimony at that time. During the trial defendants sought to introduce testimony concerning the large number of similar ladders manufactured. Upon objection by plaintiffs, the court heard arguments out of the presence of the jury, and sustained the objection. Plaintiffs now urge that this sanction was insufficient.

Plaintiffs contend that the repeated delays by defendants in responding to interrogatories and motion to produce prejudiced plaintiffs in that they were denied adequate time to prepare for trial. For example, Sears filed its answers to Interrogatories Nos. 106-115 on July 31, 1973, the first day of trial, and responses to Motions to Produce were not forthcoming until July 20 and 24, 1 week before trial commenced, although orders of the court had required earlier compliance.

Plaintiffs also assert that the answers furnished to interrogatories were inadequate and in part erroneous with the result that plaintiffs were unable to prepare adequately some elements of their case. The following instances of insufficient answers are particularly noteworthy:

(1) In its first response to plaintiffs' second motion to produce, White Metal stated that it does not now manufacture any ladders similar to the plaintiffs' ladder. This answer was false; Mr. Records testified during the trial that a substantially similar ladder is still manufactured by White Metal and sold by Sears.

(2) In response to Interrogatories Nos. 33, 34, 97 and 98, and the first, second and third motions to produce, all of which asked for information and documents relating to similar claims for injuries arising out of ladder accidents, defendants failed to disclose two cases involving similar White Metal ladders sold by Sears: the *Glenn Smith* case pending in Iowa, and *Lifritz v. Sears, Roebuck & Co.*, 472 S.W.2d 28 (Mo. App. 1971). After plaintiffs learned of these two cases and filed additional Interrogatories Nos. 106 to 115, asking for specific information as to those cases by name, to which defendants were ordered to comply by May 23, 1973, and again by June 7 and again by July 24, defendants did not comply until July

16 (White Metal) and July 31 (Sears) which was shortly before trial began on July 31, 1973.

(3) Plaintiffs' third motion to produce asked for photographs and complaints received by defendants in the 10 claims disclosed by White Metal in its answer to Interrogatory No. 33, and in any subsequent claims or lawsuits involving similar complaints. Defendants were ordered to comply by May 4, May 23, June 7 and July 24, 1973. Defendants never produced any documents or photographs in response to this motion. On July 24, 1973, White Metal finally answered that it had no photographs or "complaints which are similar to those alleged in the Complaint herein," *even though ten similar claims had previously been disclosed* in White Metal's supplemental answer to Interrogatory 33. Sears finally answered unresponsively on July 24, 1973, that it "refers such matters to the manufacturer of the respective products and/or its insurance carrier [previously disclosed to be Allstate Insurance Company] and so maintains no active files concerning the nature and details of claims or lawsuits," and also stated, since it "does not index customer complaints by type of product but, rather, by the name of the claimant that it is unable to ascertain whether any * * * complaints similar to those alleged in the Complaint herein were ever made." We note that Allstate Insurance Company was disclosed as the public liability insurer of White Metal in White Metal's answer to Interrogatory No. 29 filed August 24, 1971, and thus both defendants were insured by Allstate.

(4) Interrogatory 97 asked defendants to furnish additional specific information about complaints from accidents involving similar ladders. Orders were entered requiring defendants to respond by January 11, 1973, and again by March 12, 1973. Sears did not ever respond despite additional orders entered requiring answers by May 23, 1973, and June 7, 1973. White Metal responded on May 11, 1973, "[A]s a result of a move of the corporate office and records from Manhattan to Brooklyn within the recent past, records have been disrupted to the point that it will require at least several months before this Interrogatory can be answered with any greater degree of precision." No additional information was ever furnished.

We also note that Mr. Records testified that he had no knowledge of any other cases where a White Metal ladder had collapsed. On cross-examination, plaintiff called attention to defendants' answer to Interrogatory No. 34 which characterized several claims as caused by "alleged collapse of ladder." Mr. Records answered, "I don't know, I didn't write that, I didn't answer that." In addition, plaintiff cites five additional ladder cases in which Mr. Records was a witness on behalf of defendants White Metal or Sears.

Plaintiffs also call to our attention the following soliloquy in defendants' closing argument: "[T]he ladder * * * was manufactured and sold from about 1962 through 1967. [S]o, when you receive a catalogue that whole time, I assume a substantial number of ladders were sold. We are told about four claims that resulted, or five, perhaps, and Mr. Records could only recall one * * *." It is evident that defendants sought to impress the jury with plaintiffs' inability to introduce evidence of other claims resulting from similar ladder accidents when it was in fact defendants' failure to comply with discovery orders that prevented plaintiffs from learning the details of other accident cases.

These examples are illustrative of the defendants' abuse of discovery process. It would unduly prolong this opinion to discuss all the abuses appearing in the record. Defendants' conduct manifestly frustrated plaintiffs' efforts at pretrial discovery and subverted the purposes of discovery procedures. Withholding information about other ladder accident cases similar to Biehlers effectively prevented plaintiffs from showing that defendants knew or should have known of the defective design or manufacture of Biehlers' ladder.

We are particularly concerned that the defendant Sears sought to evade production of information and documents by stating that it turned all product complaints over to its insurer Allstate. As we noted earlier, Allstate was also the insurer of White Metal. Thus both defendants should have been able to furnish the requested materials. In *Drehle v. Fleming*, 49 Ill.2d 293, 297, 274 N.E.2d 53 (1971), the supreme court stated, "Neither a litigant nor *the insurer of a litigant* can frustrate discovery procedures by fragmenting its knowledge among different agents or attorneys." (Emphasis added.) The court then approved remanding the case for a new trial where an undisclosed statement of a witness was in the possession of an attorney for the defendant other than the one retained in that case. We believe that the situation here is substantially the same as in *Drehle*, and that these defendants have fragmented their knowledge of relevant evidence among three corporate entities (White Metal, Sears and Allstate) with the result of frustrating discovery procedures.

On appeal plaintiffs seek a reversal of the judgment entered and either judgment for plaintiff on the issue of liability with a new trial on the issue of damages or, in the alternative, a new trial on all issues, and urge that the trial court abused its discretion when it refused to grant one or the other of these remedies when ruling on plaintiffs' post-trial motion.

■■ The general principles of discovery which apply to this case were discussed in *Carlson v. General Motors Corp.*, 9 Ill.App.3d 606, 289 N.E.2d 439 (1st Dist. 1972), and should be restated here. The purpose

of discovery rules is to enable attorneys to better prepare and evaluate their cases. (*People ex rel. Terry v. Fisher,* 12 Ill.2d 231, 145 N.E.2d 588 (1957).) Ascertainment of truth and ultimate disposition of the law suit is better accomplished when parties are well educated as to their respective claims in advance of trial. (*Monier v. Chamberlain,* 35 Ill.2d 351, 221 N.E.2d 410, 18 A.L.R.3rd 471 (1966).) The purposes of litigation are best served when each party knows as much about the controversy as is reasonably practicable; pretrial discovery procedures are intended to enhance the truth-seeking process and good-faith compliance with such procedures is both desirable and necessary. *Drehle v. Fleming,* 129 Ill.App.2d 166, 263 N.E.2d 348 (3rd Dist. 1970), *aff'd,* 49 Ill.2d 293, 274 N.E.2d 53 (1971).

· Supreme Court Rule 219 (Ill. Rev. Stat., ch. 110A, § 219(c)) authorizes the trial court to impose a variety of sanctions in the event of unreasonable noncompliance with discovery rules. We are persuaded that the conduct of the defendants in this case amounted to unreasonable noncompliance in that they repeatedly disregarded rules and orders of the trial court. See *Serpe v. Yellow Cab Co.,* 10 Ill.App.3d 1, 293 N.E.2d 742 (1st Dist. 1973).

We are cognizant of the difficulty confronting the trial judge in this case where pretrial discovery was assigned to two other judges. The trial judge stated for the record that "It is very difficult to go back over the history of this case, now, over the years, and see just where the fault lies, but diligence on the part of the Defendants, and particularly Sears, Roebuck, has been lacking * * *."

A reviewing court is more limited than the trial court in the choice of sanctions available. Where, as here, plaintiffs were denied a fair trial because of noncompliance with discovery orders which prejudiced their ability to present their case, we must consider whether this case is one that would justify entry of judgment for plaintiff on the issue of liability. Cases where judgment in bar was entered as a sanction were reviewed in *Gillespie v. Norfolk & Western Ry.,* 103 Ill.App.2d 449, 243 N.E.2d 27 (4th Dist. 1968), where the court concluded that there must be evidence of refusal to comply, or gross neglect, and of disobedience or repeated disobedience of court orders. More recently this court has said that entry of judgment (by dismissal with prejudice) should be employed only as a last resort, when the uncooperative party shows a deliberate, contumacious or unwarranted disregard for the court's authority. (*Department of Transport. v. Zabel,* 29 Ill.App.3d 407, 30 N.E.2d 878 (3rd Dist. 1975).) Taking into account the fact that the trial court here, in the exercise of its discretion, declined to impose any post-trial sanctions, we

believe that entry of judgment for plaintiff on the issue of liability would be an excessive sanction not warranted by the facts of this case.

■■ In *Drehle v. Fleming*, 129 Ill.App.2d 166, 171 (3d Dist. 1970), it was stated: "Courts have ample authority to secure compliance with pre-trial discovery proceedings, including the award of a new trial, where the noncompliance is substantial and not in good faith." (See also *Slatten v. City of Chicago*, 12 Ill.App.3d 808, 299 N.E.2d 442 (1st Dist. 1973); *Carlson v. General Motors Corp.*) At this stage of the case, we believe the most appropriate remedy available to us is to reverse the judgment and remand for a new trial on all issues with plaintiffs to be allowed additional time for further discovery consistent with this opinion.

Since additional discovery is to be permitted, we must consider plaintiffs' contention that the objections to certain interrogatories were improperly sustained. Plaintiffs filed approximately 115 interrogatories, most of which contained subsections with multiple questions, and defendants' objections to 48 questions were sustained. Only five of the objections are set out in the excerpts of record and the interrogatories and answers are only partially set out. Plaintiffs contend that their discovery was wrongfully impeded by erroneous rulings of the court excusing defendants from answering certain of the interrogatories which are identified only by number. No citation of authority or other argument is advanced in support of plaintiffs' contention, and we are not required to search the record for purposes of finding error. (*Mitchell v. Toledo, Peoria & Western R.R. Co.*, 4 Ill.App.3d 1, 279 N.E.2d 782 (3d Dist. 1972).) Furthermore, defendants have entirely ignored plaintiffs' argument and have made no effort to show that the rulings of the circuit court were correct. Consequently we consider it unnecessary to prolong this opinion by setting forth the interrogatories and objections thereto; we have examined the record, however, and find that objections to certain interrogatories were improperly sustained and that these interrogatories were relevant and proper. Considering that our rulings as to relevancy of specific questions would have no precedential value, we merely state that objections to the following interrogatories should have been overruled: Nos. 6(a), 41-44, 47-48, 56-58, 102, 105, and 107.

In view of our decision to reverse and remand for a new trial, we must also consider errors which occurred during the course of the trial, and which may arise again in the course of the new trial. Accordingly, we note the following rulings of the trial court which we hold to have been erroneous:

■ (1) Plaintiffs offered in evidence two photographs, one showing the condition of Mr. Biehler's left ankle 6 weeks after the injury, and

the other showing its condition 15 months after injury. The court sustained defendants' objection that the photographs were immaterial and irrelevant since they did not show the condition existing at the time of trial. In *Baggett v. Ashland Oil & Refining Co.*, 92 Ill.App.2d 433, 236 N.E.2d 243 (1st Dist. 1968), it was held that photographs showing plaintiff's burned body as it appeared 1 month and 6 months after injury were properly admitted and that they "were useful to the jury as an aid in comprehending the extent of plaintiff's physical injuries." (92 Ill.App.2d 433, 449.) The photographs of Mr. Biehler's ankle would serve a similar useful purpose, and the trial court erred in excluding plaintiffs' photographs from evidence.

■■ (2) Defendants were permitted to question Mr. Biehler about the existence of medical insurance benefits. During cross-examination, defense attorney asked plaintiff if his present employer "has any type of employees' benefits, like health and accident insurance? A. Yes, Sir." Plaintiffs objected and the court permitted the answer to stand. The rule is well established that benefits available to plaintiff from a collateral source will not be considered as diminishing the damages due for an injury and that defendants cannot decrease damages by the amount of hospitalization or medical insurance payments received by plaintiff where defendants did not contribute to the payment of the insurance premiums. (*Bireline v. Espenscheid*, 15 Ill.App.3d 368, 304 N.E.2d 508 (3d Dist. 1973); Annot. 13 A.L.R.2d 355 (1950).) Calling attention to the fact that a plaintiff had such insurance can be prejudicial error because the jury may conclude that plaintiff sustained no damages for which he was entitled to recover if his medical bills were paid by insurance. (*Phelan v. Santelli*, 30 Ill.App.3d 657 (3d Dist. 1975); *Davidson v. Loomis*, 282 Ill.App. 515 (1st Dist. 1935).) The fact that in this case defendants' question concerned Mr. Biehler's present insurance, and not coverage at the time of the accident, does not prevent application of the rule. Testimony of both Mr. Biehler and his doctor disclosed that future surgery had been recommended. Plaintiffs' objection should have been sustained and the jury instructed to disregard the question and answer.

(3) The trial court sustained objections to plaintiffs' attempted cross-examination of defendants' witnesses concerning the design of similar ladders manufactured by companies other than White Metal and marketed by Sears in 1971, 1972 and 1973. Defendants admit that evidence of alternate designs and subsequent safety modifications by White Metal were admissible to show alternatives available to White Metal at the time of the Biehlers' accident, but argue that plaintiffs did not show

that the designs of ladders sold later by Sears were available prior to the date of the accident.

■■ In *Sutkowski v. Universal Marion Corp.*, 5 Ill.App.3d 313, 319, 281 N.E.2d 749 (3d Dist. 1972), the court discussed the admissibility of evidence of post-occurrence design changes in product liability actions, stating:

> "If the feasibility of alternative designs may be shown by the opinions of experts or by the existence of safety devices on other products or in the design thereof we conclude that evidence of a post occurrence change is equally relevant and material in determining that a design alternative is feasible."

We believe the evidence concerning designs of similar ladders subsequently marketed by Sears was erroneously excluded. The feasibility of such design changes at the time of plaintiffs' accident is a question of the weight to be given the evidence, and not a question of admissibility.

(4) Testimony of plaintiffs' doctor concerning the cost of future hospitalization of Mr. Biehler was excluded when defendants objected that such testimony would be speculative and conjectural. On appeal defendants argue that the trial judge was justified in determining that there was no reasonable certainty that future surgery would be performed and thus that evidence of the cost of such surgery was not admissible.

The generally accepted rule concerning recovery for future medical services is set out in 22 Am. Jur. 2d *Damages* § 312 (1965):

> "Where the plaintiff proves with reasonable certainty the need for future medical services, he is entitled to compensation for the reasonable value thereof. Expert testimony is admissible or required as evidence of the certainty of the need and as to the reasonable value of the services to be rendered."

Illinois courts have recognized these principles. See *Burnett v. Caho*, 7 Ill.App.3d 266, 285 N.E.2d 619, 627 (3d Dist. 1972); 15 I.L.P. *Damages* § 60 (1968); IPI 30.01. Also see Annot., 69 A.L.R.2d 1261 (1960).

■■ In the case before us the doctor testified that in his opinion Mr. Biehler would need surgery to fuse the subastragalar joint and adjacent joints to reduce the pain and motion while walking. The doctor also stated, "[I]f he can continue at a sedentary job he may get along without surgery, but I have a feeling that he will elect surgery." Earlier Mr. Biehler testified that he had not elected to have the fusion surgery yet because he was financially unable to do so and because of concern about retention of his present job. We believe this evidence posed a question of fact for the jury to decide whether the plaintiff was reasonably certain to have future surgery or not, and, if so, what the reasonable value of

446

future medical services would be. Therefore, it was error to exclude expert testimony as to costs of the recommended surgery.

We have carefully reviewed other errors alleged by plaintiffs and conclude that their arguments pertaining thereto are without merit.

Judgment reversed and remanded for new trial in accordance with the views expressed in this opinion.

Reversed and remanded.

STOUDER, P. J., and BARRY, J., concur.